John A. STROTHCAMP and Gladys Strothcamp, his wife, Plaintiffs-Respondents,

v.

SANDY FORD RANCH, INC., a Missouri Corporation, Defendant-Appellant.

No. 33318.

St. Louis Court of Appeals.

Missouri.

April 15, 1969.

Leo A. Politte and Emil L. Poertner, Washington, for defendant-appellant.

G. C. Beckham, Steelville, for plaintiffs-respondents.

CLEMENS, Commissioner.

This is a suit to reform a deed by striking a restrictive clause that plaintiffs contend was fraudulently inserted in the deed by the defendant-grantor. The trial court reformed the deed accordingly, and the defendant appeals. The issue is whether plaintiffs' evidence established actionable fraud warranting reformation. We find it did and affirm the decree.

The plaintiff-grantees are John A. and Gladys Strothcamp. The defendant-grantor is a closely held corporation owned and managed by Mr. Francis H. Kennedy. The final transaction took place through the agency of the parties' banks: the Bank of Bourbon for Mr. Strothcamp and the Bank of Sullivan for Mr. Kennedy.

The gist of plaintiffs' petition is that after preliminary negotiations Mr. Kennedy signed and exhibited to Mr. Strothcamp a warranty deed which he said he would deposit at his bank, the Bank of Sullivan, for delivery upon payment of $4,000 by the Bank of Bourbon, Mr. Strothcamp's bank; that Mr. Kennedy did not deposit the original deed but fraudulently substituted another deed, one in which he had inserted a restrictive clause; that when the Bank of Sullivan informed the Bank of Bourbon that Mr. Kennedy had deposited the deed, Mr. Strothcamp had the Bank of Bourbon remit $4,000 to the Bank of Sullivan, for Mr. Kennedy's account—this in ignorance of Mr. Kennedy's substitution of the new deed for the original. Plaintiffs prayed that the delivered, recorded deed be reformed by striking the restrictive clause.

The trial court found plaintiffs' allegations were true. Granting deference to its findings of fact but independently reaching our own conclusions from the record (Civil Rule 73.01(d), V.A.M.R.), we find these are the essential facts:

Several times before April 29, 1967, Mr. Strothcamp and Mr. Kennedy had discussed the sale of the defendant's tract on

Highway W, near Stanton in Franklin County. On that day they orally agreed on a sale for $4,000. No mention was made —then or later—about a restrictive clause limiting the erection of advertising signs on the land.[1] Mr. Kennedy and Mr. Strothcamp went to the office of Mr. Harold Williams, a notary public, Mr. Kennedy taking with him a blank warranty deed to which he had affixed the defendant's corporate seal. After some discussion about the description of the land to be conveyed, Mr. Williams typed the deed and Mr. Kennedy signed it as defendant's president. (The notary made a photocopy of the original deed and plaintiffs introduced it in evidence; it described an unencumbered title.) Meanwhile, Mr. Strothcamp had written a $4,000 check on the Bank of Bourbon payable to Mr. Kennedy. Mr. Strothcamp examined the deed and Mr. Kennedy examined the check. Then Mr. Kennedy declined to accept Mr. Strothcamp's check without knowing it was good. He instructed Mr. Strothcamp to have his banker call him and verify the sufficiency of the check. He also told Mr. Strothcamp he would deposit the deed with the Bank of Sullivan and have it recorded as soon as Mr. Strothcamp's funds were transferred from the Bank of Bourbon to the Bank of Sullivan. (This transfer of funds to the Bank of Sullivan was necessary since it held a deed of trust on the defendant's land.)

Having planted the idea of this closing plan in Mr. Strothcamp's mind, Mr. Kennedy began to spin the web that later entrapped the plaintiffs. Mr. Kennedy rewrote the deed, inserted the restrictive clause, and delivered the altered deed to the Bank of Sullivan with instructions to collect the sale price from Mr. Strothcamp's bank and apply the proceeds on the defendant's secured debt. As previously agreed, Mr. Kennedy had ordered a certificate of title, and in a few days his abstractor called the Bank of Bourbon to say the sale was ready to close. The Bank of Bourbon then asked the Bank of Sullivan how Mr. Strothcamp's remittance to Mr. Kennedy should be made. As instructed, the Bank of Bourbon sent the Bank of Sullivan a cashier's check payable to Mr. Kennedy and the Bank of Sullivan, and the check was so endorsed and paid. The deed, however, was not sent to Mr. Strothcamp; after recording by Mr. Kennedy's abstractor it was kept in Mr. Kennedy's file at the Bank of Sullivan. Several weeks later Mr. Strothcamp found the deed there and discovered it was not the original deed but was Mr. Kennedy's substitute containing the restrictive clause.

Fraud is a favorite subject of equity, and courts readily grant relief to defrauded persons when they suffer a wrong irremediable at law. (Chouteau v. City of St. Louis, Mo.App., 131 S.W.2d 902[4].) And reformation of instruments is a proper equitable remedy when a defendant's fraud has induced a plaintiff to pay for something less than he bargained for. (Citizens Bank of Festus v. Frazier, 352 Mo. 367, 177 S.W.2d 477[2], and Hoxsey Hotel Co. v. Farm & Home Savings & Loan Ass'n, 349 Mo. 880, 163 S.W.2d 766 [3].)

We conclude that the evidence established actionable fraud. As stated in the case of Universal C.I.T. Credit Corp. v. Tatro, Mo.App., 416 S.W.2d 696[1, 4], the required elements are these: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) the right to rely thereon, and (9) the consequent injury. Failure to establish any one element is fatal to recovery. (Emily

1. Mr. Kennedy testified he had discussed the restriction with Mr. Strothcamp, but his inconsistent conduct and the contrary testimony of other witnesses compel us to accept plaintiffs' version.

v. Bayne, Mo.App., 371 S.W.2d 663[3].) To prove fraud the evidence must be clear and convincing (Bolten v. Colburn, Mo. App., 389 S.W.2d 384[7]); but each element may be shown by circumstantial evidence (Schnuck v. Kriegshauser, Mo., 371 S.W.2d 242[3]), and misrepresentations may be accomplished by conduct as well as words (Hutchings v. Tipsword, Mo.App., 363 S.W.2d 40[1]).

■ Bearing all this in mind, we examine the evidence concerning each element. (1) Mr. Kennedy's act of depositing the corporation's deed with the Bank of Sullivan—as he had told Mr. Strothcamp he would do—was a representation that it was the same deed he had executed and shown to Mr. Strothcamp. (2) The falsity of this representation is established by Mr. Kennedy's admission that he substituted a deed with the restrictive covenant. (3) The substituted deed conveyed less than the parties had bargained for, so the misrepresentation was material. (4) Having secretly altered the original deed himself, there is no question of Mr. Kennedy's knowledge of the misrepresentation. (5) Mr. Kennedy's instructions to his bank to collect the sale price from Mr. Strothcamp's bank and apply the proceeds on defendant's secured debt—as was done—showed Mr. Kennedy's intent that the deposit of the substituted deed be acted on. (6) Neither Mr. Strothcamp nor his bank knew that Mr. Kennedy had substituted the altered deed for the original. (7) Mr. Strothcamp and his bank relied and acted on the statement by the Bank of Sullivan, induced by Mr. Kennedy, that the sale was ready for closing. (8) Mr. Kennedy deliberately substituted and deposited the altered deed without giving notice of the substitution to Mr. Strothcamp or either bank. He intended that they rely on his words and conduct, and they did. Thus, the element of right to rely on his representation was fulfilled. As said in Restatement of the Law of Torts, § 540: "The recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." (9) As the direct result of Mr. Kennedy's deceptive words and conduct, Mr. Strothcamp got less than he paid for. These factual elements are similar to those held to constitute actionable fraud in the Tatro case, supra, where the defendant got money from the plaintiff by presenting loan papers bearing the purported but forged signatures of his wife. There, as here, the defendant got plaintiff's money by knowingly delivering a spurious document, different from what the parties had bargained for. We find there was actionable fraud warranting reformation.

■ Defendant's brief presents three arguments. First, that there was no mutual mistake since Mr. Kennedy's insertion of the restrictive clause was intentional. This misses the mark because plaintiff relied not on mutual mistake but on fraud, which itself is a ground for reformation. (Moran Bolt & Nut Mfg. Co. v. St. Louis Car Co., 210 Mo. 715, 109 S.W. 47[2]; Thornburgh v. Warson Village Corp., Mo.App., 331 S.W.2d 144[1, 2]; 76 C.J.S. Reformation of Instruments §§ 28, 29.)

■ Defendant next contends there could be no fraud since there was no confidential relationship between the parties. That is not the law. In fraud cases the parties' relationship is relevant only insofar as it relates to the right to rely on the representation without investigation. (Monsanto Chemical Works v. American Zinc, Lead & Smelting Co., Mo., 253 S.W. 1006[4, 5].) Under point (8) above we held that Mr. Strothcamp did have a right to rely on Mr. Kennedy's representation without investigation. Their non-confidential relationship was immaterial.

■ Last, defendant argues—apparently relying on the statute of frauds—that there was no preliminary contract between the parties, and hence nothing to which defendant's deed could be con-

formed. Defendant cites no authority for the proposition that reformation must be preceded by an *enforceable* contract. To say that is a prerequisite to reformation would ignore the maxim that the statute of frauds is designed to prevent fraud and may not be used by a defendant as a shelter to avoid the penalty of his own fraud. (Bick v. Mueller, 346 Mo. 746, 142 S.W.2d 1021[1].) We think the prerequisite is adequately stated in Conrath v. Houchin, 226 Mo.App. 261, 34 S.W.2d 190[3]: "Before there can be a reformation there must be an understanding between the parties and an intention must be shown." Enough that here there was an understanding that an unencumbered title was to be conveyed; that Mr. Kennedy induced Mr. Strothcamp to act on that understanding but conveyed instead an encumbered title. This being a fraud on plaintiffs they were entitled in equity to the reformation granted.

The decree is affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the decree is affirmed.

WOLFE, P. J., and JAMES H. KEET, JR., Special Judge, concur.