Barbara A. HOOD, Plaintiff-Respondent,

v.

Roy J. DENNY, Jr., and Margaret Mary Denny, his wife, and Timothy C. Denny and Patricia A. Denny, his wife, Defendants-Appellants.

No. KCD 29049.

Missouri Court of Appeals, Kansas City District.

Aug. 8, 1977.

Ronald K. Carpenter, Charles E. McElyea (Phillips & McElyea Corp.), Camdenton, for defendants-appellants.

John L. Hearne (Keyes & Hearne), Jefferson City, for plaintiff-respondent.

Before DIXON, P. J., and WASSERSTROM and TURNAGE, JJ.

DIXON, Presiding Judge.

Plaintiff brought a suit for reformation of deed and for title by adverse possession. Defendants appeal from a judgment in favor of plaintiff on both counts. The ultimate issue is whether fraud will support reformation and the sufficiency of the evidence. The judgment is affirmed.

The following facts are uncontested. Defendants, Roy and Margaret Denny, acquired property at the Lake of the Ozarks in the early nineteen fifties, including the parcel which is the subject of this action. The description in the warranty deed conveying to the Dennys the parcel in dispute begins at the southwest corner of a quarter quarter section of section 10, township 40 north, range 16 west. The description continues north 360 feet along the quarter quarter section line "to the *center* of a small cove of the Lake of the Ozarks," then northeast 780 feet down the center of the cove, east 585 feet and then south, west and north until the description closes. A survey of the general area which was prepared in 1955 by a Mr. Stanton, County Surveyor, is reproduced below.

PLAINTIFFS EXHBT 4   MARILEA STADLER REPORTER   DEC 10 1975

WATER AREA

Survey # 55-338-
Date, April 25, 1955.
made on magnetic
declination of 3° East-
See certificate attached.

SW Corner
Sec 10-40-16

Hoffman
Acres

N   E
W   S

Joshua O. Stauffer,
County Surveyor,
Miller Co., Mo.

East-West 1193'

East-West 1150'

East-West 786'

The Dennys became acquainted with plaintiff and her ex-husband around this time. In 1960, the Dennys conveyed to the Hoods a parcel described as follows:

Beginning at a point on the East-West section line between sections Ten (10) and Fifteen (15), Township Forty (40) North, Range Sixteen (16) West of the 5th Principal Meridian, which is one hundred forty two (142) feet East of the Southwest corner of Section Ten (10) and the Northwest corner of Section Fifteen (15); thence East on section line 1193 feet to the Southeast corner of the Southwest quarter of the Southwest quarter of said section (10); *thence North on subdivision line 360 feet to the point of a cove on the Lake of the Ozarks; thence North 72°30′ East in the center of said cove a distance of approximately 600 feet; thence due South to a point on the South shoreline of said cove marked by a metal pipe which is 595 feet from said point of said cove; thence South 580 feet to the South side of a roadway running Northeast to Southwest*; thence South 70° West along the South line of said roadway 100 feet; thence South 87°30′ West, continuing along the South line of said roadway, a distance of 250 feet; thence South 66° West along said roadway 200 feet; thence South 60° West along the South side of said roadway 300 feet; and thence South 70° West, along the South side of said roadway to the intersection of said roadway and the State maintained Jackson Branch Road, a distance of 292 feet; thence North 40° West along the Easterly side of said Jackson Branch Road 100 feet; thence North 38° West 100 feet; thence North 25° West continuing along the Easterly side of said Jackson Branch Road, a distance of 250 feet; thence so continuing North 37° West 100 feet and North 45° West 100 feet and North 55° West 100 feet and thence North 68° West 68 feet to the point of beginning. (Emphasis added.)

A survey prepared by Mr. Stanton in connection with this sale and dated April 27, 1960 is reproduced below. The shaded area denotes the property purportedly conveyed.

PLAINTIFFS 3
EXHIBIT

MARILEA STADLER
REPORTER

DEC 10 1975

Survey No. 60-502 F                                                    April 27, 1960
Made for Mr & Mrs Roy J. Denny, jr. and Mr and Mrs John D. Hood of St. Louis Co., Mo.
Made on magnetic declination of 5°.  Plat on scale of approximately 300 feet to 1 inch.
Chainmen sworn: Chas. E. Williams and James A. Mathews both of Tuscumbia, Mo.
Land surveyed in Sections 10 and 15, Township 40 North, Range 16, West of the 5th Principal
Meridian in Morgan County, Missouri.

### CERTIFICATE

The above plat and that part in color shows the line and bearings of the survey begin-
ning at the West corner of the two sections.  The degrees and distances are as shown on
said plat.  All of the roadway on the South is within the confines of the tract surveyed,
which extends to the Northeast boundary of the Jackson Branch Road.

This concluded our assignment and the survey was closed.  The particular legal
description is contained in the deed from Mr. and Mrs. Denny to Mr. and Mrs. Hood.

                                        Jackson C. Stanton
                                        County Surveyor for
Missouri State Registered LS # 88.      Miller County, Missouri
      (Seal)

In 1967, the Hoods requested Mr. Wurm, a licensed surveyor, to survey their property. In making this survey, Mr. Wurm discovered that the description in the warranty deed from the Dennys to the Hoods would not close due to missing and erroneous calls. The survey prepared by Mr. Wurm showed the end of the cove extending 200 feet west of the quarter quarter section line. He measured the eastern boundary of plaintiff's property at 702 feet from the south side of the cove to the south side of the private road, rather than the 580 feet called for in the deed, and also determined that two calls from the easternmost portion of the private road forming the southern boundary of plaintiff's property were missing. It was as a result of this survey that the dispute arose between the parties. The diagram below shows the discrepancies as illustrated by Wurm's survey. The shaded area indicates the property in dispute. According to this survey, the description in the deed, if literally followed, provided for approximately 395 feet of shoreline when the deed description is conformed to the actual ownership by starting from the quarter quarter corner rather than the "point of the cove." The small inlet in the cove at the northwest corner of the disputed area is known as Chigger Gulch.

SAM F. COOK, JR.
& DELORES, H.W.
10²⁸± Acres to
Center Line of Cove

In 1969, the Dennys conveyed to their son the property east of Chigger Gulch as a gift. The Hoods were divorced in 1972, at which time Mr. Hood quit claimed his interest in the lake property to plaintiff.

Plaintiff brought this suit against the Dennys and their son, Timothy Denny and his wife thereafter. The first count of plaintiff's petition alleges fraud and seeks reformation of the deed to conform with the Wurm survey by changing the description to "thence North on subdivision line 360 feet *to a point in the center of a cove* of the Lake of the Ozarks," and adding the missing calls. Count two seeks title in plaintiff by adverse possession. Timothy Denny and his wife counterclaimed for adverse possession. The court found for plaintiff on both counts and against defendants on their counterclaim, and ordered the deed reformed as requested and the deed from the Dennys to their son set aside. The defendants challenge the sufficiency of the evidence necessitating a more detailed recitation of the facts as related at trial. The evidence relating to negotiations for the sale of the property and as to adverse user was sharply conflicting.

Plaintiff testified that the Dennys had expressed a desire to sell some lake property so in the early spring of 1960 she and her husband went with the Dennys to the lake. Mr. Hood and Mr. Denny looked over the property, and Mr. Hood requested a survey. Several days after returning from the lake the Dennys came to the Hoods' home with the two Stanton surveys. The 1960 survey shows a shoreline of 595 feet on the parcel to be sold and plaintiff testified that Mr. Denny stressed that he owned to the point of the cove as shown on the survey maps. The parties did not discuss acreage. The Hoods gave the Dennys a check for the property at that meeting and received a deed a few days later. Stanton was hired by Mr. Denny, but Mr. Hood paid for the survey.

Plaintiff further testified that the Hoods built a house on the property near Chigger Gulch in 1962. They built a boat dock in front of the house which was anchored on both shores of the inlet in which Chigger Gulch terminates. She testified that she planted pine trees east of Chigger Gulch, although admitting, "In reality I did not know at that time that the ground was supposed to be mine, I did not discover this until 1969." She had always thought before that discovery that she owned to the end of the cove as shown on the plat. The Hoods paid taxes on 21.79 acres. On cross-examination, plaintiff testified that there is a concrete slab enclosed by screens and referred to as a gazebo, on the disputed property for which her husband helped pour the concrete. There is also an outhouse on the property. Plaintiff did not discover the conveyance by the Dennys to their son until 1973 when she started subdividing the tract. From the time she discovered the discrepancy in around 1969 until her divorce in 1972 she did not contact anyone about the problem because she did not know whether she or her husband would be awarded the property.

Both Mr. Denny and Mr. Hood testified for defendants. Mr. Denny testified that negotiations for the sale began in the spring of 1960. Plaintiff may have been present, but his discussions were always with Mr. Hood. Denny and Hood never actually stepped off the property or discussed shoreline, the agreement being "from the ravine to the county road from the entrance road to the lake." Hood and Denny put a stake in the ground at this point. Mr. Denny never discussed selling east of Chigger Gulch at this time. He did not feel that he owned to the end of the cove and denied representing that he did to the Hoods. Mr. Denny testified that he did not receive the Stanton survey dated April 27, 1960 until August or September of 1960. He also denied taking either survey to the Hood home prior to closing. He wasn't aware of a problem with the deed until 1972 or 1973. On cross examination, plaintiff introduced a letter from Mr. Stanton to Mr. Denny with reference to the 1960 Stanton survey. The letter is dated April 29, 1960 reporting the making of the survey, drafting of a deed from the Dennys to the Hoods and showing a fee of $35.00. Denny did not

remember if the deed accompanied this letter, but the deed was subscribed in St. Louis where Denny resided May 2, 1960.

Mr. Denny confirmed plaintiff's testimony that a gazebo and outhouse are located on the disputed area. The outhouse was built around 1955 and the gazebo around 1961. Mr. Hood helped pour the concrete and finished the work when one of Denny's sons stepped on a nail and had to be taken to a doctor. Denny paid for bulldozing and concrete in connection with building the gazebo. He also had a boat dock attached to the property near the gazebo. The gazebo was used as sleeping quarters for family and friends of the Dennys. The Hoods would come there often when the parties were on friendly terms. The Dennys also dumped trash on the disputed land. After 1960, the Dennys used the property in dispute at least once a week in the summer.

John Hood testified that only he and Denny discussed the sale of the property and on the visit to the lake marked Chigger Gulch as the boundary. No exact amount of lake frontage was discussed, the agreement being west from Chigger Gulch as far as Denny owned. He further testified that he did not see the 1960 Stanton survey until after he paid Denny. The only use made by the Hoods of the disputed area was securing their dock by a rope on the east side of Chigger Gulch. Mr. Hood helped Denny with the gazebo as a favor to a friend. He also testified that the planting of pine trees on the disputed land was "just a friendly gesture."

Timothy Denny, Roy Denny's son, testified that he and his wife received the disputed land by deed from his parents in 1969. He has used the property only on visits to his parents, walking over the land to go down to the water.

Mr. Forbes, a friend of defendants, testified that both before and after the gazebo was installed he has camped on the disputed land at the invitation of Mr. Denny.

■ Defendants first attack the judgment of the trial court reforming the deed, arguing that reformation was not a proper remedy where fraud is pleaded and proved, and that even if reformation is proper, the judgment of the trial court was against the weight of the evidence.

In *Hoxsey Hotel Co. v. Farm & Home Savings & Loan Assoc. of Missouri,* 349 Mo. 880, 163 S.W.2d 766, 770 (1942), the Supreme Court rejected an argument that fraud would defeat reformation of a deed. "We think reformation may be had where there is a mistake on the part of one party caused by fraud or inequitable conduct of the other party, as well as in the case of mutual mistake." *Hoxsey, supra,* at 770; *Citizens Bank of Festus v. Frazier,* 352 Mo. 367, 177 S.W.2d 477, 482 (Mo.1944); *Strothcamp v. Sandy Ford Ranch, Inc.,* 440 S.W.2d 193, 195 (Mo.App.1969).

■ As to the sufficiency of the evidence to support the judgment granting reformation, defendants correctly recognize that the action of the trial court must be measured against the standard of review set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), requiring a decree or judgment of a trial court to be sustained unless there is no substantial evidence to support it. The record here reveals substantial evidence to support a finding of all of the elements of fraud. See *Strothcamp v. Sandy Ford Ranch, Inc., supra.*

Plaintiff testified that Mr. Denny represented to her and her ex-husband that he owned from Chigger Gulch west to the end of the cove which was 595 feet of shoreline and as the trial court found the deed given to the Dennys called for a beginning point on the "point of the cove" when the Hood deed called for a beginning point in the *center* of the cove. The known falsity of this statement was clear from Mr. Denny's testimony that he knew he did not own as far West as to the end of the cove and did not intend to sell east of Chigger Gulch. The subsequent acceptance of a check from the Hoods is evidence of the Hoods' reliance and Denny's intent that they rely on this misrepresentation. The Hoods' reliance on Denny's statements as supported by the erroneous surveys was certainly justified, and plaintiff's injury resulted from the fail-

ure of the conveyance to give plaintiff the land bargained for.

■ While defendants' evidence conflicted with that of plaintiff as to the negotiations for sale, the question of fraud was one of fact, and the trial court believed plaintiff's testimony. Because the 'trial court had an opportunity to observe the witnesses on the stand and so judge their credibility, deference should be given to its findings of facts. *Allen v. Smith,* 375 S.W.2d 874, 881 (Mo.App.1964); *Thornburgh v. Warson Village Corporation,* 331 S.W.2d 144, 148 (Mo. App.1960). The record does not support a firm belief that the judgment granting reformation is erroneous. *Murphy v. Carron, supra.*

■ Defendants also attack the ruling of the trial court against defendants, Timothy C. Denny and Patricia A. Denny, on their counterclaim for adverse possession. Defendants contend that they clearly showed all of the elements of adverse possession, i. e., a possession which is " 'hostile and under a claim of right, actual, open and notorious, exclusive and continuous.' " *Wykle v. Colombo,* 457 S.W.2d 695, 700 (Mo.1970). The trial court found that until the senior Dennys transferred the tract in dispute to their son in 1969, their use of the disputed tract was a "permissive use constituting a shared usage with plaintiff and her husband; that no act of defendants occurred to change the permissive nature of their usage into an adverse and notorious claim and never constituted an actual, peaceable and exclusive possession thereof." There was substantial evidence to support this finding. *Murphy v. Carron, supra.*

■ It is true that a grantor may reacquire title from his grantee by adverse possession. *Rottink v. Nagle,* 275 Mo. 196, 204 S.W. 802, 803 (1918). This is true whether title is transferred for valuable consideration or fraudulently to avoid the grantor's debts. *Rottink v. Nagle, supra.* However, continued possession of the transferred property alone will not ripen into a claim of adverse possession, the rule being that following delivery of the deed a grantor continuing in possession must by words, acts or conduct notify the grantee that he is claiming title and possession *against* the covenants of the grantor's deed, the presumption being that he holds possession in subservience to the covenants. *Rottink v. Nagle, supra; Barada-Ghio Real Estate Co. v. Keleher,* 214 S.W. 961, 962 (Mo.1919). "It is not a mere occupancy or possession which must be known to the true owner to establish title by adverse possession, but one which is in opposition to his rights and in defiance of, or inconsistent with, his title." *Reinheimer v. Rhedans,* 327 S.W.2d 823, 830 (Mo.1959); *Wilkerson v. Thompson,* 82 Mo. 317 (1884).

In the instant case, following transfer of the deed, not only did the character of the Dennys' possession continue unaltered, but also a permissive and joint use by the parties was apparent. It was not until 1969 when the Dennys attempted to convey the property in dispute to their son that the Hoods received constructive notice of a hostile claim. Thus, the trial court ruled correctly that plaintiff has not been under notice for the requisite statutory period that her grantor's possession was adverse and hostile.

The defendants' final point, as it is stated, is "The trial court erred in failing to reject the repugnant portion of the legal description prepared by the scrivener, Jackson Stanton," fails to comply with Rule 84.04(d) requiring the points to state wherein and why the actions of the trial court complained of are erroneous. Considered with the argument, however, it may be discerned what error is claimed.

■ The argument under this point is in two parts. First, the defendants urge that the trial court should have ruled that regardless of any ambiguities in the description, Chigger Gulch became the eastern boundary of plaintiff's property by a continuing agreement of the parties, citing *Ashauer v. Peer,* 147 S.W.2d 144, 146 (Mo. App.1941); *Martin v. Hays,* 228 S.W. 741, 743–744 (Mo.1921); *Barnes v. Allison,* 166 Mo. 96, 102, 65 S.W. 781, 783 (1901). Defendants' claim of an agreed upon boundary

line constitutes an affirmative defense. *Gillenwaters Building Co. v. Lipscomb,* 482 S.W.2d 409, 413 (Mo.1972); *Nichols v. Tallman,* 189 S.W. 1184, 1185 (Mo.1916), which was neither pleaded nor raised at trial. A defense not presented to the trial court cannot be considered on appeal. *Kammeyer v. Concordia Telephone Co.,* 446 S.W.2d 486, 491 (Mo.App.1969).

■ The second argument under defendants' final point is an assertion that the portion of the deed description referring to a point on the south shoreline of the cove marked by a metal pipe was controlling over the description of that point as being 595 feet from the point of the cove, and, therefore, the distance call of 595 feet should be disregarded as repugnant. The argument assumes that the metal pipe referred to is the one placed in Chigger Gulch by plaintiff's ex-husband and Mr. Denny. Defendants cite cases holding that a monument controls a distance call, however, those cases do not involve fraud. The trial court's finding of mistake induced by fraud makes such cases inapposite. The fraudulent inducement was defendants' representation that plaintiff would receive 595 feet of shoreline extending west of Chigger Gulch to the end of the cove when defendants admittedly did not own the west 200 feet of that section of shoreline. The reformation granted gave plaintiff clear title to 595 feet of shoreline, approximately 200 feet of which necessarily includes property owned by defendants east of Chigger Gulch. Until the true nature of the defendants' ownership was disclosed, the plaintiff thought she owned a different shoreline. What was essential to the bargain was the length of the shoreline conveyed. The trial court on substantial evidence found that "shoreline" distance was an important motivating factor in sales of lakefront property. By its decree, the court restored in equity that which plaintiff had been fraudulently induced to believe she owned, 595 feet of shoreline.

Defendants also question the sufficiency of the evidence to support a judgment for plaintiff on her claim for adverse posses-

sion. However, in view of the decision affirming the judgment of the trial court granting reformation, that issue need not be reached or decided.

The judgment of the trial court is affirmed.

All concur.