**Les LANCASTER and Cheri Lancaster, Appellants,**

v.

**Selby Russell NEFF and Ellyn A. Neff, Respondents.**

No. WD 59589.

Missouri Court of Appeals, Western District.

March 12, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 2002.

Application for Transfer Denied June 25, 2002.

Sherwin L. Epstein, John W. Roe, and Mark H. Epstein, Kansas City, for Appellants.

Elvin S. Douglas, Jr., Harrisonville, for Respondents.

Before EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Les and Cheri Lancaster appeal from the trial court's judgment against them on their trespass claim and in favor of Selby and Ellyn Neff on their counterclaim for adverse possession of disputed land. The Lancasters raise three points on appeal. Their first point is that the trial court erred in finding that they did not offer any evidence to prove that the previous owners' subsequent possession of the previously deeded property was permissive in that there is a legal presumption that any subsequent possession of property by a grantor, following his conveyance, is permissive and does not by itself ripen into adverse possession. The second point on appeal is that the trial court erred in entering judgment for the Neffs because there was no substantial evidence to support it and it was against the overwhelming weight of the evidence, which proved that the Neffs did not meet their burden of establishing adverse possession in that they did not own the property in dispute for the required ten-year period and did not establish the requisite intent of their seller to adversely possess the disputed strip of property. The third point on appeal is that the trial court erred in entering judgment for the Neffs in that it misapplied the law by not recognizing that courts are reluctant to grant adverse possession when the original predecessors in title were family members.

We affirm.

## Facts

This case involves a boundary line dispute between two adjoining landowners, the Lancasters and the Neffs. The following is a brief summary of the facts. The facts will be further discussed as warranted by the points on appeal.

In 1954, the Osborns, the original owners of all the property in dispute, purchased approximately 57½ acres of property in Cass County, Missouri. The property had a fence running east-west on it when the Osborns purchased it in 1954. The fence did not enclose any land. Over a period of time, the Osborns sold their property off in three parcels. First, they sold a 20–acre tract of ground with a house to the far north to Howard Blevins. That tract is not in dispute. Next, the Osborns sold a 17–acre parcel on the far south of their property to their nephew, Joseph Evans, in 1975. The Osborns retained the remaining 20–acre parcel in the middle for themselves. Joseph Evans' 17–acre parcel was south of and adjoining the Osborns' 20–acre parcel. The Osborns and Joseph Evans were neighbors from 1975 until 1988,[1] when Ms. Osborn sold the 20–acre tract to Selby and Ellyn Neff.

In 1995, Joseph Evans sold his 17–acre parcel to Les and Cheri Lancaster by a warranty deed containing a metes and bounds legal description. From 1995 to the present, the Neffs and Lancasters

---

1. Mr. Osborn died in 1982.

have been neighbors. In late 1995, the Lancasters had their property surveyed. The survey showed that their true property line, based upon the legal description in the warranty deed they received from Evans, was 12 to 15 feet farther north than the fence running east-west between their property and the Neffs' property. The Neffs claimed they owned the land up to the fence.

The Lancasters filed their petition for trespass against the Neffs in 1996. The Neffs filed a counterclaim for adverse possession of the disputed land. Following trial, the trial court found in favor of the Neffs on their counterclaim for adverse possession, and against the Lancasters on their claim for trespass. This appeal follows.

## Standard of Review

In *Chapman v. Lavy*, 20 S.W.3d 610, 612–13 (Mo.App. E.D.2000), the court set forth the standard of review as follows:

Our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. We accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence.

In assessing if there is substantial evidence, we must defer to the trial court on factual issues and cannot substitute our judgment for that of the trial judge. Where there is conflicting evidence, the trial court has the prerogative to determine the credibility of witnesses, accepting or rejecting all, part or none of the testimony.

(Citations omitted.)

## Point I

The Lancasters' first point on appeal is that the trial court erred in finding that they did not offer any evidence to prove that the Osborns' subsequent possession of the previously deeded property was permissive in that there is a legal presumption that any subsequent possession of property by a grantor, following his conveyance, is permissive and does not by itself ripen into adverse possession. The Lancasters argue that the trial court misapplied the law by shifting the burden to them to prove that the Osborns' possession was permissive.

In order to acquire title by adverse possession under § 516.010,[2] the claiming party has the burden of proving that he "possessed the land, and that the possession was (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, for 10 years prior to commencement of [the] action to perfect title by adverse possession." *Shoemaker v. Houchen*, 994 S.W.2d 40, 44 (Mo.App. W.D.1999). The burden of proving each element by a preponderance of the evidence is on the party claiming adverse possession, and failure to prove even one element defeats the claim. *Id.*

As explained in *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo.App. W.D.1996),

[t]hese possessory elements are further defined as follows: 1) Hostile means a possession antagonistic to claims of all others, with an intent to occupy as one's own. Under the "hostile" element, even if the possessor mistakenly believed he had title and occupied the land as his

2. All statutory references are to RSMo 2000.

own, the element is satisfied; i.e., he must intend to occupy as his own and there is no requirement for adverse possession that he be holding title to take away from a true owner. 2) "Open and Notorious is satisfied by visible acts of ownership exercised over the premises," such as maintaining and improving the property. 3) Actual is determined by the nature and location of the property and a use by the possessor based upon and expected therefrom, including planting and mowing of grass. 4) Exclusive possession means the claimant holds the land for the claimant only and not for another, for example using the land as his or her own backyard and not allowing others to so use the property. 5) The ten years of possession must be consecutive years and need not be the ten years just prior to the filing of the law suit, but once the period has run, the possessor is vested with title and the record owner is divested.

(Citations omitted.)

■ While a grantor may reacquire title from his grantee by adverse possession,

> continued possession of the transferred property alone will not ripen into a claim of adverse possession, the rule being that following delivery of the deed a grantor continuing in possession must by words, acts or conduct notify the grantee that he is claiming title and possession against the covenants of the grantor's deed, the presumption being that he holds possession in subservience to the covenants. "It is not a mere occupancy or possession which must be known to the true owner to establish title by adverse possession, but one which is in opposition to his rights and in defiance of, or inconsistent with, his title."

*Hood v. Denny,* 555 S.W.2d 337, 346 (Mo. App.1977) (citations omitted); *see also Barada–Ghio Real Estate Co. v. Keleher,* 214 S.W. 961, 962 (Mo.1919); *Robinson v. Reynolds,* 176 S.W. 3, 5 (Mo. banc 1915); 3 Am.Jur.2d *Adverse Possession* §§ 217–218 (1986); 2 C.J.S. *Adverse Possession* §§ 132–133 (1972); G.H. Fischer, Annotation, *Grantor's Possession as Adverse Possession Against Grantee,* 39 A.L.R.2d 353 et seq. (1955). In other words, a grantee may "not be deprived of his title to the land by the retention of possession by [the] grantor for any length of time whatever, unless sufficient notice was given him of the cessation of the presumed friendly possession and the beginning of a hostile possession." *Robinson,* 176 S.W. at 6. "[T]his principle is held to obtain only between the original grantor and grantee and not between their grantees or successors." *Keokuk Inv. Co. v. Doerhoff,* 530 S.W.2d 507, 509 (Mo.App.1975).

■ The Lancasters argue that the trial court's statement that "[p]laintiff offered no evidence to indicate that the possession was permissive" indicates that the trial court erroneously shifted the burden to them to show that the Osborns' possession of the disputed land was permissive. However, the trial court's statement must be read in context. The trial court went on to cite the rule set forth in *Hood* pertaining to the "grantors exception," and stated that "[t]he special exception for grantors has been overcome in this instance." The trial court cited the Osborns' "continued, open use of the property" and the Osborns' comments to Evans that the fence line was the property line [3] in finding that the Osborns intended to hold title to the north of the fence up to the fence line. We defer to the trial court's determinations of witness credibility. *Chapman,* 20

---

**3.** Evans testified that his uncle told him that the fence line was the property line.

S.W.3d at 612–13. The trial court found Evans' testimony credible, and we will not disturb that determination.

It is clear that the trial court understood the "grantors exception," recognized its validity, and found that the presumption of permissiveness was rebutted in this case. As we read it, the court's statement about which the Lancasters complain simply reflects the court's finding that the Lancasters offered no evidence to counter the Neffs' evidence that the Osborns' possession of the disputed land was not permissive. There was no erroneous shifting of the burden of proof on the issue of permissive possession. Point I is denied.

## Point II

The Lancasters' second point on appeal is that the trial court erred in entering judgment for the Neffs because there was no substantial evidence to support it and it was against the overwhelming weight of the evidence, which proved that the Neffs did not meet their burden of establishing adverse possession in that they did not own the property in dispute for the required ten-year period and did not establish the requisite intent of their seller to adversely possess the disputed strip of property.

■ A claimant may tack his adverse possession on to the time of his grantors in order to establish the requisite ten years. *Kitterman,* 924 S.W.2d at 876. However, in order to do so, the claimant is required to prove that the ten-year period of continuous possession is one during which all of the required elements of adverse possession have consistently been met. *Flowers v. Roberts,* 979 S.W.2d 465, 470 (Mo.App. E.D.1998). "The ten years of possession must be consecutive years and need not be the ten years just prior to the filing of the law suit...." *Kitterman,* 924 S.W.2d at 876.

■ The Neffs bought their property in 1988. They filed their counterclaim for adverse possession in 1996. They do not have the requisite ten years to establish an adverse possession claim themselves. Therefore, in order to prove adverse possession, they must either tack their possession on to the Osborns' adverse possession or prove that the Osborns adversely possessed the land themselves for ten consecutive years. The Lancasters contend that the Osborns' possession was neither hostile nor exclusive, and therefore the Neffs' adverse possession claim must fail.

■ We first address the "hostile" element. As stated in Point I, "[h]ostile means a possession antagonistic to claims of all others, with an intent to occupy as one's own. Under the 'hostile' element, even if the possessor mistakenly believed he had title and occupied the land as his own, the element is satisfied[.]" *Kitterman,* 924 S.W.2d at 876. (Citations omitted.) As stated in *Landers v. Thompson,* 356 Mo. 1169, 205 S.W.2d 544, 546 (1947):

> If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs.

(Citation omitted.)

Evans testified that from the time he bought the property in 1975, there was "never a doubt" that the Osborns claimed the land north of the fence, and that he and the Osborns always considered the fence line to be the property line. Furthermore, Evans testified that the Osborns replaced the fence, which was previously a

hog wire fence, with a chain-link fence in 1977, and that the Osborns continuously used the land north of the fence from the time he bought the property. This evidence indicates that the "hostile" element was satisfied.

We next discuss the "exclusive" element. As stated in *Flowers*, 979 S.W.2d at 470, "[e]xclusive" possession means that the claimant must hold the land for himself or herself only, and not for another. To satisfy this element an adverse possession claimant must show that he or she "wholly excluded" the owner from possession for the required period; but this does not mean that mere "sporadic use, temporary presence or permissive visits by others (including the title holder)" will negate this element and defeat a claim of adverse possession.

(Citations omitted.) *See also Ortmeyer v. Bruemmer*, 680 S.W.2d 384, 393 (Mo.App. W.D.1984). In support of their claim that the Osborns' possession of the disputed land was not exclusive, the Lancasters point to Evans' testimony that he had a key to the gate in the fence on the disputed property, that he sometimes mowed the disputed land, and that he maintained a garden there for a couple of years. However, Evans testified that 1) the purpose of the gate was to allow he and the Osborns to visit; 2) he mowed the grass on the land as a favor to Ms. Osborn, and not under a claim of right; and 3) he maintained the garden at the request of the Osborns, and he never would have done so without their permission. This evidence supports a finding that the Osborns' possession was exclusive for the purpose of adverse possession.

The "hostile" and "exclusive" elements are the only elements the Lancasters claim were not satisfied by the Osborns. We find that the evidence supports a finding that these elements were satisfied. At a minimum, the evidence indicates that the

Osborns satisfied the elements of adverse possession from 1975 to 1988, exceeding the ten-year requirement. Thus, as the trial court stated, the disputed land "was actually lost to adverse possession before the Neffs ever purchased their property." Point II is denied.

### Point III

■■■ The Lancasters' third point on appeal is that the trial court erred in entering judgment for the Neffs in that it misapplied the law by not recognizing that courts are reluctant to grant adverse possession when the original predecessors in title were family members.

■■■ The Lancasters cite *Keokuk Inv. Co. v. Doerhoff*, 530 S.W.2d 507 (Mo.App. 1975), for the rule that "when a family relationship exists between the parties, i.e., such as between original predecessors in title, in addition to a grantor-grantee relationship the courts are reluctant to grant title by adverse possession." However, *Keokuk* actually provides as follows:

> [Appellant] also contends that when a family relationship exists between the parties, i.e., in this instance between the original predecessors in title, in addition to a grantor-grantee relationship, courts are reluctant to grant title by adverse possession. This argument is without merit. There was no evidence that the common ancestors in title were related. They had the same last name. But we cannot speculate that such a relationship existed.

*Keokuk*, 530 S.W.2d at 509. The rule concerning evidence of adverse possession where family members are involved was set forth by the southern district in *Tallent v. Barrett*, 598 S.W.2d 602, 606 (Mo. App. S.D.1980), where the court stated as follows:

Where there exists a family relationship among the involved parties, that relationship will prevent or rebut a presumption of adverse holding that may arise under similar circumstances involving nonrelated parties. Stronger evidence of adverse possession is required in the presence of a family relationship than where no such relationship exists.

See also 3 Am.Jur.2d *Adverse Possession* § 217 (1986); 2 C.J.S. *Adverse Possession* § 132 (1972); G.H. Fischer, Annotation, *Grantor's Possession as Adverse Possession Against Grantee*, 39 A.L.R.2d 353, 385 (1955).

However, this does not mean that a party can never make a successful case for adverse possession where the original grantor and grantee were related. In *Brown v. Brown*, 106 Mo. 611, 17 S.W. 640, 641 (1891), the court held that a man adversely possessed property that he had deeded to his mother where the following circumstances existed: 1) the son had used and improved the property as if it were his own, with the knowledge of his mother, who lived about a mile and a quarter away; 2) the mother did not charge the son any rent for the use of the property; 3) the mother admitted that the property was her son's land; 4) the reputation among the neighbors was that the property was the son's; 5) the consideration named in the deed never passed or was intended to be passed; and 6) the improvements that the son made upon the property with the knowledge of his mother were valuable and permanent. Although the case at bar presents a different factual scenario than that in *Brown*, we find that Missouri courts' "reluctance" to grant adverse possession where family members are involved does not prevent a finding of adverse possession under the circumstances of this case, where the evidence of adverse possession is strong. Point III is denied.

The judgment of the trial court is affirmed.

EDWIN H. SMITH, P.J., and HOLLIGER, J., concur.