

# In the Missouri Court of Appeals
# Eastern District

JONATHAN LUKEFAHR, ET UX.,

    Appellants,

vs.

CAROL TAYLOR, ET UX.,

    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. ED110773

Appeal from the Circuit Court of
Perry County
Cause No. 16PR-CC00018

Honorable Scott A. Lipke

Filed: August 29, 2023

**Introduction**

Appellants Jonathan and Rachelle Lukefahr (Appellants) appeal the Perry County circuit court's judgment denying their petition to quiet title over a land tract (Tract II) owned by Respondents Carol and Hubert Taylor (Respondents) through adverse possession, denying their trespass claim against the Respondents and granting Respondents' ejectment counterclaim. Appellants raise one point on appeal, arguing that the trial court erred by denying their petition to quiet title over the land through adverse possession because the court's judgment was against the weight of the evidence regarding the hostile use requirement. Essentially, Appellants argue that the record clearly demonstrates their hostile use of Tract II despite the heightened standard of proof in adverse possession cases involving family members. We affirm.

1

**Factual and Procedural Background**

On March 2, 1989, Leroy and Patsy Lukefahr (Grandparents) purchased a farm (Gisi Farm) in Perry County, Missouri. On November 5, 1990, Grandparents transferred Gisi Farm and several other real properties into the Leroy W. Lukefahr and Patsy E. Lukefahr Joint Revocable Trust (Trust). Appellant Jonathan Lukefahr, their grandson, lived with Grandparents for several summers as a child and lived with them fulltime in high school. Grandparents often allowed their children and grandchildren to move onto and use their several properties.

On March 31, 2000, Appellant purchased a subdivided portion of Gisi Farm (Tract I) from the Trust. Tract I is adjacent to the remainder of Gisi Farm (Tract II) on its immediate western boundary. Tract II contains a pond and a dam. When Appellant bought Tract I, he built a house on the property, started mowing the grass and conducted other groundskeeping work in the surrounding area, including around the pond and dam on Tract II. With assistance from Leroy Lukefahr and Respondent Hubert Taylor, Appellant installed water pipes in the dam on Tract II and built a shop on the back part of Tract I, where he operated a construction and farming business until 2007 or 2008. Then, Appellant repurposed the dam, creating a road for traveling between his house and the shop on Tract I. Appellant began maintaining the road in 2001. In 2002, Appellant stocked the Tract II pond with fish.

Around 2002, Appellant planted trees on Tracts I and II, prompting Leroy Lukefahr to tell Appellant, "you know that those (trees) are not on your property." Leroy Lukefahr's comment to Appellant was the only comment Grandparents made to Appellant about his use of Tract II following his purchase and improvements involving Tract I. In 2004, Appellant moved horses onto Tract II where they remained until 2010 or 2011.

After marrying Jonathan Lukefahr, Appellant Rachelle Lukefahr converted her husband's Tract I workshop into a hair salon in 2008. To reach her business, customers drove on the road along the dam and located on Tract II.(T. Tr. 47, 144, 153) As a customer of Rachelle Lukefahr, Patsy Lukefahr traveled the road numerous times to reach the hair salon.

Over several years, Appellants would hold family functions on Tracts I and II that were attended by Grandparents and other family members. On June 19, 2005, Leroy Lukefahr died, leaving Patsy Lukefahr as the sole owner of Tract II. In 2005, Patsy Lukefahr directed Dean Lukefahr as the successor trustee to build a fence on the eastern side of Tract II that essentially separated the property from Appellants' Tract I. When doing so, he constructed the fence by removing portions of a fence previously built by Appellants on Tract II. Dean Lukefahr testified that Appellants maintained certain portions of Tract II and they would often invite him to functions they hosted on Tract II.

Further, Appellants, Respondents and Dean Lukefahr testified that Grandparents did not care if Appellants used the lake and dam on Tract II. Despite this, Dean Lukefahr and Respondent Carol Taylor testified that they did not consider the pond to be Appellants' property. After receiving permission from Leroy Lukefahr, one particular neighbor (Neighbor) fished in the lake almost weekly beginning at a time not long after Grandparents purchased Gisi Farm. He continuously fished there until 2013 and never requested or received Appellants' permission to fish at the location because Neighbor knew they did not own the pond.

Patsy Lukefahr died on February 25, 2016, and the Trust transferred real property east of Appellants' Tract I, including Tract II, to Respondents who then transferred the property into their own trust on April 5. On April 18, Appellants filed a petition to quiet title to the Tract II property through adverse possession and raised common law trespass and statutory trespass

3

claims under § 537.330. Respondents denied the allegations and filed a counterclaim against Appellants for trespass and ejectment.

On November 21, 2021, the Perry County circuit court conducted a trial involving these issues. On March 11, 2022, the court entered its judgment and decree denying Appellants' petition and ordering their ejectment from Tract II. Appellants timely filed a motion for a new trial which was denied on June 27. Now Appellants appeal.

**Standard of Review**

In a judge-tried case, we will affirm the judgment of the trial court unless substantial evidence does not support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "If the issue to be decided is one of fact, this Court determines whether the judgment is supported by substantial evidence and whether the judgment is against the weight of the evidence." *JAS Apartments, Inc. v. Naji*, 354 S.W.3d 175, 182 (Mo. banc 2011). We will "accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard all contrary evidence." *Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009). We defer to the trial court's determinations of credibility and view the evidence and the inferences drawn therefrom in the light most favorable to the judgment. *Vinson v. Adams*, 192 S.W.3d 492, 494 (Mo. App. E.D. 2006).

**Discussion**

In their brief, Respondents argue Appellants failed to follow the against-the-weight-of-the-evidence analysis escribed in *Houston v. Crider*, 317 S.W.3d 178 (Mo. App. S.D. 2010). We agree. *Id.* at 186 (citing *Gifford v. Geosling*, 951 S.W.2d 641, 643 (Mo. App. W.D. 1997)). "[A]n against-the-weight-of-the-evidence challenge requires completion of four sequential steps:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment; (2) identify all of the favorable evidence in the record supporting the existence of that proposition; (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and, (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition."

*Id.* at 187.

Appellants failed to complete the *Crider* analysis. Specifically, they do not identify all the favorable evidence in the record concerning the factual proposition supporting the trial court's judgment. Although Appellants describe evidence supporting their assertion that they adversely possessed Tract II, they sparsely address the contrary evidence supporting the trial court's decision other than briefly citing portions of the trial court judgment. Further, Appellants failed to comply with the final step because they did not address how the evidence supporting the trial court judgment was insufficient or "lacking in probative value" when compared to the totality of the evidence. The against the weight of the evidence standard assists in the review process and protects against an abuse of discretion by the trial courts. *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014). When neglecting to conduct a *Crider* analysis, Appellants act at their own peril and jeopardize their claim.

While we agree that Appellants fail to pursue a meaningful *Crider* analysis, we still choose to review Appellants' argument on the merits which is consistent with our philosophy and preference to dispose of a case following a meaningful consideration of the arguments rather than dismiss the matter due to other deficiencies. *State ex rel. Aimonette v. C. & R. Heating & Service Co.*, 475 S.W.2d 409, 412 (Mo. App. 1971).

In their sole point on appeal, Appellants argue the trial court's judgment was against the weight of the evidence regarding the hostility requirement of adverse possession. "To acquire

title by adverse possession or prescription, possession must be: (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the necessary period of years prior to the commencement of action." *Watson*, 298 S.W.3d at 526. Possession is hostile if it is antagonistic to the claims of all others. *Sleepy Hollow Ranch LLC v. Robinson*, 373 S.W.3d 485, 496 (Mo. App. S.D. 2012) (quoting *Cooper v. Carns*, 263 S.W.3d 729, 733 (Mo. App. W.D. 2008)). The claimant must occupy the land with the intent to possess it as his or her own. *Id.*

Appellants claim their extensive use of Tract II established the hostility element because their use was antagonistic to Grandparents' ownership of the tract and they intended to possess it as their own. We disagree and conclude that Appellants' use of Tract II was permissive due to the close familial relationship shared between Appellants and Grandparents. "Where there exists a family relationship among the involved parties, that relationship will prevent or rebut a presumption of adverse holding that may arise under similar circumstances involving nonrelated parties." *Lancaster v. Neff*, 75 S.W.3d 767, 775 (Mo. App. W.D. 2002). "Stronger evidence of adverse possession is required in the presence of a family relationship than where no such relationship exists." *Id.* This is a high bar. The general rule is that occupying a family estate is permissible and more common whereas acts of occupation or hostility in an adverse possession claim must be demonstrated by a clear, positive, continued disclaimer and disavowal of the family member's title. *Sleepy Hollow Ranch*, 373 S.W.3d at 495-96 (citing *Tallent v. Barrett*, 598 S.W.2d 602, 606 (Mo. App. S.D. 1980)).

Here, testimony from Appellants, Respondents and Dean Lukefahr established that Grandparents shared a close relationship with their children and grandchildren, including Jonathan Lukefahr, allowing them to occupy and utilize their several properties for their

6

enjoyment and benefit. The testimony supports Grandparents' willingness to allow Appellants to use the road along the dam, the pond and other portions of Tract II. Also, the record does not reflect that Grandparents discouraged Appellants' access to Tract II other than Leroy Lukefahr's passing comment about Jonathan Lukefahr planting trees on property that was not his own.

Appellants cite *Brown v. Brown*, 106 Mo. 611, 17 S.W. 640 (Mo. 1891) to support their claim that they satisfied the hostility requirement by making multiple improvements to the property, easily overcoming the heightened burden applicable to a family relationship. In *Brown*, the court held that a man adversely possessed property that he had previously deeded to his mother. *Id*. at 641. After the son transferred the affected property to her, the mother did not charge him any rent for the use of the property and he continued to use and even make permanent and valuable improvements on the property. *Id*. Additionally, the neighbors considered the property as belonging to the son and the mother admitted that it was her son's land. *Id*.

Like the son who successfully acquired the affected property through adverse possession in *Brown*, Appellants argue their many improvements to Tract II—with the full knowledge of the family—demonstrate compelling evidence of their claim on the property. More specifically, they removed trees near the lake; they removed and reconstructed the dam; they built and maintained a road along the dam facilitating access to the southern portion of the property and they expanded the size of the pond. As additional evidence of their property claim, Appellants constructed a fence over a portion of Tract II and even moved horses on this portion of the property for a period of time.

Despite the improvements that Appellants reference, we conclude that *Brown* is distinguishable from this matter. Unlike *Brown*, Grandparents did not transfer Tract II's

7

ownership to Appellants. In *Brown*, the son transferred the adversely possessed property to his mother without consideration to avoid his creditors and continued to use the property as his own despite the transfer. *Brown*, 106 Mo. 611, 17 S.W. at 641. Here, however, the record does not reflect that Appellants owned Tract II before purchasing Tract I or that a straw transfer of Tract II occurred between Appellants and Grandparents.

In the alternative, *Sleepy Hollow Ranch LLC v. Robinson*, 373 S.W.3d 485 (Mo. App. S.D. 2012) is instructive. In *Sleepy Hollow Ranch*, the court found that the hostility element was satisfied in an adverse claim involving a family dispute between a nephew and his aunt. *Id.* at 497. After the aunt acquired the property through an inheritance, the nephew continued residing at the location and treated it as his own, such as harvesting and selling hay, cutting and selling timber, utilizing it for grazing cattle, leasing portions of the property to other tenants for the use of cattle and even granting easements to utilities. *Id.* at 495. Despite the depth, extent and volume of the activities occurring on the aunt's property, the court held that the nephew's possession did not transform from permissive to hostile until 1990 when his aunt directed him to leave the property but he refused to do so. *Id.* at 496.

To persevere, Appellants are burdened with presenting strong evidence of their adverse possession claim considering this is an internecine battle among family and we do not find that they have done so. *Lancaster*, 75 S.W.3d at 775. Here, testimony from Appellants, Respondents and Dean Lukefahr established that Grandparents shared a close relationship with their children and grandchildren, including Jonathan Lukefahr, allowing them to occupy and utilize their several properties for their enjoyment and benefit. Unlike the *Sleepy Hollow Ranch* nephew who refused to leave the property, Appellants did not express their intent to take possession of the property in defiance of their relatives in order to satisfy the hostility element of their adverse

8

possession claim. While there is ample evidence of Appellants' intent to share in the use of the Tract II property, they never demonstrated their intent to convert it to their use exclusively. For example, Appellants constructed a road along the dam, enlarged the lake and stocked it with fish but allowed Patsy Lukefahr to drive on the road on the innumerable occasions when traveling to Appellant's hair salon and the Neighbor continued fishing in the lake on an almost weekly basis between 2000 and 2013, absent the months marked by inclement weather, without ever requesting Appellants' permission to do so.

Additionally, Patsy was not the only one who utilized the road along the dam. Further reflecting on Appellants' failure to exclude Grandparents from the property, both Leroy and Patsy would also regularly drive on the road when traveling to and from family gatherings. *See Sleepy Hollow Ranch*, 373 S.W.3d at 496 (finding family members' land possession transformed from permissive to hostile where the family members used the property as their own and defied landowner's demands to leave the property).

In short, Appellants face a high bar to hurdle when demonstrating that their conduct veered from permissive to hostile in an adverse possession claim involving family. *Tallent*, 598 S.W.2d at 606. Applying the case law, we find that that they have not met this burden. While Appellants point to noteworthy events like constructing the dam, building the road, installing a fence and cutting the grass, the persistent failure to exclude Grandparents on numerous occasions or prohibit the Neighbor's regular fishing excursions heavily undermine their property claim. For these reasons, the trial court both correctly denied Appellants' adverse possession claim and properly rejected the trespassing assertion against Respondents and rightly granted the counterclaim ejecting Appellants from Tract II. Point I denied.

## Conclusion

We affirm the circuit court's judgment because Appellants failed to demonstrate that their acts of occupation were "a clear, positive, continued disclaimer and disavowal" of their family members' title, necessary to satisfy the hostility requirement of an adverse possession claim.

_____
Thomas C. Clark II, J.

Kurt S. Odenwald, P.J., and
Philip M. Hess, J., concur.