William F. POE and Stella Poe,
Plaintiffs–Respondents,

v.

Tommie MITCHENER, Mona J. Boyd,
Jody Cheshire and Steve Cheshire,
Defendants–Appellants.

No. SD 28276.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 28, 2009.

Christina L. Kime, Piedmont, for Appellants.

Scott A. Robbins, Kennedy, Kennedy & Robbins, LC, Poplar Bluff, for Respondents.

JOHN E. PARRISH, Judge.

Tommie Mitchener[1], Mona Boyd[2], Jody Cheshire and Steve Cheshire (collectively referred to as defendants) appeal a judgment rendered against them in an action brought by William F. Poe and Stella Poe (plaintiffs) and in a counterclaim defendants brought against plaintiffs. This court affirms.

Plaintiffs sought to quiet title to certain property in Ripley County, Missouri (Count I); a declaratory judgment that a certain lake is a private, non-navigable waterway (Count II); and to enjoin defendants from entering onto the property in question and for damages for trespass (Count III).[3]

Defendants' counterclaim sought to establish an easement by prescription for the use of the lake referred to in plaintiffs' petition (Counterclaim Count I) and for injunction prohibiting plaintiffs from "(1) placing a fence or net in the lake ... restricting access of persons and stream wildlife in the lake; (2) reducing the flow from the dam so as to lower the level of the lake; or (3) in any other manner interfering with or inhibiting the access of ... Defendants" to any portion of the lake (Counterclaim Count II).

Plaintiffs and defendants own contiguous tracts of real estate. Plaintiff William F. Poe and defendant Tommie Mitchener are brother and sister. They have three other siblings, Joanne Harder, Janet Russell (deceased), and Don Poe (deceased). Their parents are Voris Poe (deceased) and Marie Poe. In 1971 plaintiffs purchased most of the tract of real estate they now own from William Poe's parents. The warranty deed by which plaintiffs acquired title to that property recites that the tract conveyed was "520 acres, more or less." It further recites that the grantors, Voris Poe and Marie Poe, his wife, reserved a life estate in the real estate that was conveyed. The life estate was later released by quitclaim deed dated August 26, 1980, from Voris Poe and Marie Poe, his wife, to plaintiffs.

The following events occurred at the dates noted.

*1980*

Plaintiffs granted an easement to Little Black Watershed Subdistrict of Ripley County, Missouri, for the purpose of "construction, operation, maintenance, and inspection of a floodwater retarding structure ... for the permanent storage and temporary detention, either or both, of any waters that are impounded, stored, or detained by such structure." Plaintiffs reserved "the right and privilege to use the [property over which the easement was granted] at any time, in

1. The pleadings and other documents in the legal file and the parties' briefs spell this party's name sometimes as "Mitchener" and sometimes as "Mitchner." This opinion will use the spelling "Mitchener" in that this is the spelling that appears in the caption of defendants' answer and on the briefs filed in this court.

2. Mona Boyd is the daughter of original defendant, Janet Russell, who died before this case concluded. Ms. Boyd was substituted as a party defendant following the filing of a suggestion of death in the trial court.

3. Plaintiffs further sought a preliminary injunction in Count IV of their petition. Count IV is moot in that the judgment that is appealed made the preliminary injunction permanent.

any manner and for any purpose not inconsistent with the full use and enjoyment by [the watershed subdistrict]."

Voris Poe and Marie Poe conveyed an easement over real estate they owned to the watershed subdistrict that contained identical language to that in the conveyance by which plaintiffs conveyed the easement to the watershed district.

### 1991

Voris Poe and Marie Poe conveyed real estate that included the property over which they had granted the easement to the watershed subdistrict in 1980 to Tommie Mitchener, Janet Russell (deceased), and Joanne Harder (not a defendant).

A dam was thereafter constructed on the Poe property. It was completed in 1992. The water the dam impounded created the artificial lake that is the subject of this litigation. The lake covers approximately 73 acres, about 65 of which are on plaintiffs' property. The remaining eight acres are on defendants' property.

Other events that led to the litigation that is the subject of this appeal occurred as follows.

### 1994

Defendants had the property they acquired surveyed. They divided their property equally among Joanne Harder, Janet Russell, and Tommie Mitchener. The lake was in existence at the time of the survey. The survey undertook to divide the land and the area on which water was impounded for the lake into equal shares among the sisters Harder, Russell, and Mitchener.

### 1995–96

Janet Russell and her husband, Sidney, moved onto their property in late 1995 or early 1996. They posted their property with no trespassing signs about the time they moved onto it.

Plaintiffs put pink ribbons on trees near a cove at the lake to mark the property boundary between their real estate and other real estate owned by defendants. They told other people to honor that boundary line.

### 2001, et. seq.

Plaintiffs acquired the property of William Poe's sister, Joanne Harder, by general warranty deed dated November 8, 2001. Plaintiffs thereafter had a survey performed and marked the corners of their property in the lake with buoys. This occurred sometime in 2001 or 2002. Plaintiffs thereafter improved their land and the lake. The improvements included stocking the lake with fish, clearing some of the area around the lake, and construction of shelters and other structures.

From time to time, plaintiffs operated a small, private hunting and fishing business on their property. They permitted hunting and fishing on the property and charged fees for those privileges.

Plaintiffs allowed the use of their property for recreational hunting and fishing to those to whom they gave prior permission and limited that use to the portion of the lake that covered property they owned.

Plaintiffs have not granted use of their property or the lake to the general public. They erected fences and gates to control entry onto the property and marked the areas on the lake that could be used with buoys. Their property is posted with no trespassing signs and is marked by purple paint on fences.

The trial court held that plaintiffs and defendants each own the respective tracts of real estate that had been conveyed to them; that no party had the right to use

the surface of the lake that is impounded over the land owned by the other. The trial court further found for plaintiffs on their claim against defendants for trespass and awarded plaintiffs judgment against defendants in the amount of $1.00. It made permanent the temporary injunction that had previously been entered, thereby ordering that "Defendants Mitchner [sic], Boyd and Cheshire, be and are ... restrained from trespassing, fishing and boating on the Plaintiffs' property." Judgment was entered in accordance with the trial court's findings. Judgment was also entered for plaintiffs and against defendants on defendants' Counterclaim Counts I and II. The relief sought by defendants by way of those counterclaims was denied.

This is a case tried before the court without a jury. As such, the standard of appellate review requires that the judgment be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *M.F.M. v. J.O.M.*, 889 S.W.2d 944, 950 (Mo.App.1995). "In applying this standard, we invoke the rule of due deference, and view the evidence in the light most favorable to the judgment, disregarding all contrary evidence and permissible inferences, and accepting the trial court's determinations of credibility." *Id.* *Stewart v. Jones,* 90 S.W.3d 174, 178 (Mo. App.2002).

Defendants' first point on appeal argues that the trial court erred in denying defendants' claim that they had a right to use the entire lake by holding that defendants did not have a prescriptive easement. Defendants assert that the clear weight of the evidence required a finding that "[defendants] and/or their predecessors in title had utilized the entire lake continuously and adversely for at least ten years prior

to the filing of this case in that the [defendants] produced clear and convincing evidence that it had been their common practice for at least ten years prior to this action to utilize the entire lake surface for recreational purposes as a claim of right without asking or receiving the permission of the [plaintiffs] or any other party."

The trial court's findings of fact include:

. . .

25. Defendants ... claim the right to use the waters of the lake located on Plaintiffs [sic] property by prescription.

26. Plaintiff William Poe is a riverboat pilot. He is home 28–30 days at a time and sees the lake daily. Plaintiff Stella Poe does not work outside of the home and sees the lake daily.

27. Defendants identify March 18, 1995, May 17, 1995, May 25, 1995 and May 31, 1995, as well as Memorial Day Weekend 2005 as specific instances of this use of the lake over Plaintiffs' property. The March 18, 1995 instance was with Plaintiffs in Plaintiffs' boat.

28. Defendant Mitchner [sic] identified a Mother's Day get together that occurred on May 13, 2001, where she was invited onto Plaintiffs' property and used the lake. She also stated that she had used the lake on other occasions by invitation and with permission from Plaintiffs.

. . .

30. Witnesses, Mark Killean and Roger Cheshire, testified that they primarily fished off of the bank or dock on Defendant Russell's property.

31. Plaintiffs testified that they never saw Defendants or their guests on the Plaintiff's [sic] end of the lake, except on rare occasions. Plaintiffs notified Defendants of these instances and were told that they would not happen again.

32. Continued use of the whole lake by Defendants and their guests poses the risk of additional harm to Plaintiffs' property.

33. Defendants' proffered testimony regarding continuous non-permissive use is not credible in light of the admitted permissive use during family get togethers [sic] as late as 2001.

The trial court's conclusions of law state:

Defendants [sic] sole claim to use of the whole surface of the lake is their counterclaim for an easement by prescription.

An easement by prescription is in essence an easement by adverse possession. An easement by prescription is established by use that is "continuous, uninterrupted, visible and adverse for a period of ten years." *Thomas v. King,* 160 S.W.3d 445 (Mo.App. S.D.2005). The law does not favor the creation of prescriptive easements. *Brick House Café & Pub, L.L.C. v. Callahan,* 151 S.W.3d 838 (Mo.App. W.D.2004). The party seeking to acquire a prescriptive easement must establish each element by clear and convincing evidence. *Id.* Missouri law normally presumes that use of the claimed easement is adverse, but this presumption does not apply where there is a "family relationship between the owners of the respective tracts." *Id.,* citing *Tallent v. Barrett,* 598 S.W.2d 602 (Mo.App. S.D.1980). Stronger evidence of adverse use is "required in the presence of a family relationship than where no such relationship exists." *Tallent,* 598 S.W.2d at 606. Finally, if there is a period of permissive use during the ten year time frame, the use is not continuously adverse. *Brick House,* 151 S.W.3d at 842.

Defendants failed to present clear and convincing evidence as to each and every element of their claim. Specifically, Defendants' use of the entire lake has not been continuously adverse given the permissive use of the lake for family get togethers [sic], as recently as 2001. In fact, Plaintiffs' uncontroverted testimony was that they often took the Defendants on the lake in Plaintiffs' boat so that the Defendants could view their land on the other side of the lake. The required ten year time frame has not been met.

Further, Defendants failed to present clear and convincing evidence that their use of the entire lake was visible. Plaintiffs testified that one or both of them was on the property and could see the lake daily. They testified that they rarely saw boats on their portion of the lake without permission. On those rare occasions when the [sic] did see a boat, they notified the Defendants. "To meet the visible element, the party seeking the easement must show that the servient landowner had notice of the use and that the use was visible.... Visual, actual use commonly serves as notice to the landowner." *Kirkpatrick v. Webb,* 58 S.W.3d 903, 906 (Mo.App. S.D.2001). This Court has found that Defendants' testimony regarding visible use of the lake was not credible, and thus, concludes that Defendants have not meet [sic] their burden of proof on this element.

This Court concludes that Defendants have failed to meet their burden of proof to obtain an easement by prescription.

▆▆▆ As the Western District of this court explained in *Piazza v. Combs,* 226 S.W.3d 211 (Mo.App.2007).

"In a court-tried case, the credibility of witnesses is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness." *Riverside–Quindaro Bend Levee Dist., Platte County, Mo. v. Mo. Am. Water Co.,* 117 S.W.3d 140, 154 (Mo.App. W.D.2003).

"An appellate court will not substitute its judgment for that of the trial court judge's on credibility issues." *Id.* at 155. "An appellate court defers, moreover, to the trial court when there is conflicting evidence, even if there is evidence which would support a different conclusion." *Id.*

*Id.* at 221. *See also Matthews v. Moore,* 911 S.W.2d 664, 668 (Mo.App.1995).

The judgment of the trial court is reviewable under Rule 84.13(d). The trial court's determination of the issue asserted in Point I is supported by substantial evidence and is not against the weight of the evidence. No error of law appears. Further opinion with respect to Point I would have no precedential value. That determination is affirmed in compliance with Rule 84.16(b)(1) and (5). Point I is denied.

Point II is directed to the element that to establish an easement by prescription, the use of the property must be visible. Defendants claim that the trial court erred in denying their claim for a prescriptive easement "because the clear weight of the evidence compelled a finding that the use of the entire lake by [defendants] and/or their predecessors in title had been visible for at least ten years prior to the filing of this case"; that the evidence defendants produced clearly and convincingly demonstrated "that it had been their common practice from the lake's creation to utilize the entire lake surface for recreational purposes without asking the permission of the [plaintiffs] or any other party and [plaintiffs] had both actual and constructive notice of this use."

█ Point II is moot by reason of this court's determination of Point I. As stated in Point I, defendants failed to establish an easement by prescription because they did not prove that they used the lake continuously and adversely for the prescribed time required for establishing an easement by prescription. Parties seeking to establish a prescriptive easement must show all required elements by clear and convincing evidence. *Tamko Asphalt Products, Inc. v. Arch Associates,* 830 S.W.2d 434, 438 (Mo.App.1992). Point II is, therefore, moot in that whether any use by defendants of the lake in question was visible is of no consequence because the claim that defendants acquired a prescriptive easement otherwise failed in that defendants did not prove the required elements of continuous and adverse use of the property for the prescribed period of time.

Points III and IV are directed to the trial court's determination of defendants' counterclaim adverse to defendants. Point III asserts it was error for the trial court to find that defendants trespassed on plaintiffs' property; that defendants were entitled to reciprocal easements for the use of all the lake.

In support of Point III, defendants claim that they were entitled to a determination that they had reciprocal easements to use the entire lake because this was intended and implied by the reservations that permitted the grantors in the instruments by which the easements were conveyed to the water control subdistrict to construct the dam and impound water. Defendants claim the trial court erred in not so holding. They acknowledge, however, that this was not pled in the pleading by which they asserted their counterclaim.

█ "[T]he jurisdiction of the trial court to enter a judgment rests on a pleading which states the theory of the case sufficiently to inform the adversary and the court about the questions presented for decision." *Bryant v. Price,* 893 S.W.2d 856, 858 (Mo.App.1995). *See also Main Street Feeds, Inc. v. Hall,* 975 S.W.2d 227, 233 (Mo.App.1998). Defendants' pleadings in this case sought declaration that defen-

dants acquired an easement by prescription. Defendants argue, nevertheless, that the evidence supports the claim they now make; that the pleadings were automatically amended to assert this claim.

Rule 55.33(b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." However, "[t]he implied consent rule applies only where the evidence presented bears solely upon the unpleaded issue and not upon issues already in the case." *Edna Enterprises, Inc. v. Spirco Environmental, Inc.*, 853 S.W.2d 388, 392 (Mo.App. 1993). The evidence on which defendants rely to claim the pleadings were amended by implication are the deeds by which the parties, or their respective predecessors in title, conveyed easements to the Little Black Watershed Subdistrict. Defendants contend these documents demonstrate the intentions of the parties to have reciprocal rights to use the lake upon its formation. The evidence on which defendants rely in support of Point III, however, was necessary to establish ownership of the property in question for purposes of the quiet title action that was before the trial court. The evidence did not bear solely on unpled issues or claims.

Defendants' claim that they had implied easements to use the entire lake was not before the trial court. "An issue raised for the first time on appeal and not presented to or decided by the trial court is not preserved for appellate review." *Care and Treatment of Burgess v. State*, 72 S.W.3d 180, 184 (Mo.App.2002). Point III is denied.

Point IV contends the trial court did not determine the counterclaim in which defendants sought declaratory and injunctive relief. This point fails in that, although a judgment was entered December 22, 2006, that did not expressly address those claims, a subsequent amended judgment expressly declared that the relief sought by defendants in their counterclaim was not warranted; that defendants failed to satisfy the burden of proof that would entitle them to relief. The amended judgment found in favor of plaintiffs and against defendants on defendants' counterclaim. Point IV is denied. The judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.