Dorothy J. and Beverly A. SO-
DERHOLM, Appellant–
Respondents,

v.

Duane L. and Martha J. NAUMAN,
Respondent–Appellants.

Nos. WD 74925, WD 74945.

Missouri Court of Appeals,
Western District.

June 4, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied July
30, 2013.

Application for Transfer Denied
Oct. 29, 2013.

Leroy Tieman, Joffrey Lawyer, Keith Schieber, St. Joseph, Arnold Day, Kansas City, for Respondent–Appellant.

Robert Sundell, for Respondent–Appellant.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges.

LISA WHITE HARDWICK, Judge.

Duane L. Nauman and Martha A. Nauman (the "Naumans") appeal from the judgment of the Holt County Circuit Court quieting title to a disputed parcel of property in favor of Dorothy J. Soderholm and Beverly A. Soderholm (the "Soderholms"), and granting the Soderholms a prescriptive easement across the Naumans's land for purposes of agricultural ingress and egress. The Naumans contend the circuit court erred in denying their counterclaim that they had acquired title to the disputed parcel by adverse possession. The Naumans also assert the court erred in finding that the Soderholms acquired an easement by prescription or, if in the alternative an easement had been acquired, in finding that the easement had not been extinguished by abandonment. Alternatively, the Naumans argue that the court erred in denying their third-party adverse possession claim regarding the land subject to the easement. For reasons explained herein, we reverse and remand the circuit court's judgment on the Naumans's adverse possession counterclaim against the Soderholms and affirm the judgment on the remaining claims.

## FACTUAL & PROCEDURAL BACKGROUND

This appeal concerns two separate disputes over the property rights between adjacent landowners, the Soderholms and the Naumans. The first dispute relates to the ownership of a strip of land, of approximately .6 acres, located between the Soderholms's and Naumans's properties (the

"Soderholm Tract" and the "Nauman Tract," respectively). The second dispute relates to the Soderholms's right of access across the Nauman Tract.

The Soderholm Tract and the Nauman Tract are located in Holt County and situated north of Mound City and just west of Highway N. The Soderholm Tract is a twenty-eight acre tract located, generally, immediately west of the north-south center line of Section 1, Township 62, Range 39.

Squaw Creek serves as the Soderholm Tract's west property line. The northern portion of the Soderholm Tract's east property line abuts the Nauman Tract. The southern portion of the Soderholm Tract's east property line abuts a separate parcel owned by the Corbin family (the "Corbin Tract"). The following map, which was introduced into evidence and has been included in the record on appeal, may assist in a clearer understanding of the location of the properties.[1]

The Soderholm Tract had been owned by various members of the Nauman family beginning in 1910. In 1952, Glen and Thelma Nauman, parents of Duane Nauman, deeded the Soderholm Tract to John and Julie Andes, who in turn deeded the tract to Lucy Andes in 1958. Lucy owned the tract from 1958 to 1996 and leased it to Pete Nauman from 1973 to 1996. Finally, in 1996, the tract was conveyed to the Soderholms. The Soderholms leased the tract to John Schoonover from 1996 to

1. It should be noted that, while the Soderholms own property on both the east and west sides of Squaw Creek (shown on the map as "Valley Creek"), the Soderholm Tract that is at the center of this appeal consists only of the land to the east of Squaw Creek, which is marked by a "P" on the provided map.

2006. Schoonover also negotiated the purchase of the Soderholm Tract in 1996 on behalf of the Soderholms. In 2006, the Soderholms began leasing the tract to Ryan Meyerkorth.

The property disputes between the Soderholms and the Naumans first arose in 2007 when the Soderholms ordered a survey of the Soderholm Tract, which revealed that the true boundary between the Soderholm Tract and the Nauman Tract was approximately forty-five feet east of the line claimed by the Naumans. The strip of land between the true east line of the Soderholm tract and the east line contended by the Naumans contains approximately .6 acre of land (the "disputed .6 acre").

In August 2010, the Soderholms filed suit against the Naumans claiming ownership of the disputed .6 acre and asking the circuit court to determine "the parties' rights with regard to the boundary line controversy." Additionally, the Soderholms sought a determination of their right to access Highway N through an easement across the southern sixteen feet of the Nauman Tract (the "16–foot access way"). The Soderholms also claimed fractional ownership in the 16–foot access way by a 2009 deed from Glen Jr. and Barbara Nauman—Duane's brother and sister-in-law.[2] Finally, the Soderholms sought attorneys' fees and compensatory damages for conversion of crops on the disputed .6 acre by Duane.

The Naumans counterclaimed, alleging acquisition of both the disputed .6 acre and the 16–foot access way through adverse possession. The Naumans also brought a third party claim against Glen Jr. and Barbara asserting Glen Jr. and Barbara had no interest in the 16–foot access way to convey to the Soderholms due to the Naumans's alleged adverse possession of the access way.

A bench trial was held on December 7, 2011.

### Evidence Adduced at Trial

### Relating to the Disputed .6 Acre

Duane testified that, sometime between 1954 and 1956, John Andes made a ditch towards the north end of the Soderholm Tract, running north to south between the Soderholm Tract and the Nauman Tract to prevent dirt from washing down onto the Soderholm Tract. Duane further testified that, while there was no fence line between the tracts, he and John treated the ditch as the border between their properties, which was forty-five feet west of the true border revealed by the 2007 survey. Duane also stated that over time trees grew up on the Soderholm side of the ditch and that approximately ten years ago he had the trees bulldozed because they began encroaching over the common boundary onto the Nauman Tract. Duane indicated that he farmed the disputed .6 acre since at least 1981 and that from 1981 to 2007 no one else claimed to own the disputed .6 acre.

Pete Nauman, testifying as a witness for the Soderholms, stated that during the time he leased the Soderholm Tract, a "hedgegrow—or tree line" marked the boundary between the Soderholm Tract and the Nauman Tract. When asked if he ever had any difficulty with Duane regarding where the property line was located, Pete responded, "No way."

Schoonover testified that when the Soderholms first purchased their tract in 1996, there was an "old fence line" that separated the Soderholm Tract from the

---

**2.** For sake of clarity, members of the Nauman family may be identified by their first names when referred to individually. No disrespect is intended.

Nauman Tract. Schoonover stated that this fence line was overgrown with trees. Schoonover testified: "[T]hat fence was the boundary.... That was the boundary line. That is what I assumed was the boundary line when I negotiated for the deal." Schoonover stated that during the years he farmed the Soderholm Tract, he farmed "right up to the fence." Schoonover further testified that he never had any dispute with Duane about where the property line was located. In fact, Schoonover indicated that he never even had a discussion with Duane about the property line, explaining: "Because there was really no question.... There would be no reason to have a discussion about the boundary. That was the boundary."

Meyerkorth testified that when he first inspected the Soderholm Tract in 2006, the ground was "pretty flat" between the Soderholm and Nauman Tracts and that there was no fence or tree line separating the properties. Meyerkorth testified that there was a visible field edge between the Soderholm and Nauman Tracts, which he agreed was about forty-five feet west of the true boundary revealed by the 2007 survey. Meyerkorth stated that, prior to the 2007 survey, he and Duane observed the field edge as the boundary between the two tracts.

Adam Teale was the surveyor who conducted the 2007 survey of the Soderholm Tract. Teale testified that he noticed a field edge between the Soderholm Tract and the Nauman and Corbin Tracts. Teale further indicated that this field edge was approximately forty feet west of his surveyed line.

### Relating to the 16–Foot Access Way

Glen Nauman, Jr. testified that he remembers the 16–foot access way being used to access the Soderholm Tract as far back as 1947. Glen Jr. agreed that, with the exception of the time period Schoonover farmed the Soderholm Tract, access to the Soderholm Tract has always been across the 16–foot access way.

During Pete Nauman's testimony, counsel for the Naumans stipulated that from approximately 1973 to 1996 Pete used the 16–foot strip of land to access the Soderholm Tract.

Schoonover testified that when he first started farming the Soderholm Tract, Mitchell Corbin told him that the legal access to the Soderholm Tract was across the Nauman Tract. Yet, Schoonover said he did not talk to Duane Nauman about using the 16–foot access way because he thought Duane "was upset that he didn't get a chance to buy [the Soderholm Tract]." Schoonover explained: "I wanted to be a good neighbor. I didn't want to cause him—being upset. So I just didn't ask him." Schoonover testified that he is "good friends with Mitchell Corbin" and that Corbin said he could cross the Corbin Tract to access the Soderholm Tract. Therefore, for the entire ten years Schoonover leased the Soderholm Tract, he accessed it across the Corbin Tract.

Meyerkorth testified that in early 2006, when he first began leasing the Soderholm Tract, he used the Corbin Tract to access the Soderholm Tract. Then, in the fall of 2006, Corbin instructed Meyerkorth to stop using the Corbin Tract to access the Soderholm Tract and told Meyerkorth about the Nauman access. Meyerkorth then met with Duane and told him what Corbin had said, to which Duane responded "Well, okay." From that point on, Meyerkorth accessed the Soderholm Tract by crossing the Nauman Tract. Meyerkorth further testified that, in either 2008 or 2009, Duane told him to stop crossing the Nauman Tract. Duane also "parked a truck in the road with a do not enter sign somewhere close to the truck."

## Judgment

On January 17, 2012, the circuit court entered a judgment in favor of the Soderholms. The court ordered that "title to the entire Soderholm Tract, including its eastern boundary as described in the [2007] survey ... be confirmed and quieted in the [Soderholms]." The court also declared a prescriptive easement along the southern sixteen feet of the Nauman Tract "for purposes of agricultural ingress and egress, between the Soderholm Tract, on the west, and Route N, on the east." Finally, the circuit court noted that the Soderholms's "proposed judgment made no reference to an award of damages or attorney fees" and, therefore, the court held those issues to be abandoned. The Naumans appeal.

### STANDARD OF REVIEW

We review this court-tried case under the standard articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We review the evidence in a light most favorable to the judgment, accept it as true, and disregard any contradictory evidence. *Murphy v. Holman*, 289 S.W.3d 234, 237 (Mo.App.2009). We also defer to the trial court's determination of the weight to be given the evidence and to the credibility of the witnesses. *Id.* The trial court was free to believe some, all, or none of the testimony of any witness. *Underwood v. Hash*, 67 S.W.3d 770, 774 (Mo. App.2002).

### ANALYSIS

### The Naumans's Adverse Possession Claim Against the Soderholms

In Point I, the Naumans contend the circuit court erred in failing to find title to the disputed .6 acre to be vested in them by adverse possession because the evidence established all the elements necessary to prevail on an adverse possession claim.[3] For the reasons discussed below, this Court remands the Naumans's adverse possession claim for further findings, without expressing an opinion on its merits.

■ To prevail on a claim of adverse possession, a claimant must prove by a preponderance of evidence that his possession of the tract of land was: (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for a period of ten years. *Luttrell v. Stokes*, 77 S.W.3d 745, 750 (Mo.App.2002). The claimant has the burden of proving each element, and failure to prove any one element will defeat the claim. *Id.*

In the instant case, the circuit court did not make specific findings as to each adverse possession element, but instead limited its analysis to the "exclusive" and "open and notorious" elements.

■ "Exclusive possession for purposes of adverse possession means that the claimant holds the land for himself and not for another." *Witt v. Miller*, 845 S.W.2d 665, 667 (Mo.App.1993). "The open and notorious element of adverse possession is satisfied by exercising visible acts of ownership on the disputed property." *Mar-*

---

3. The Naumans also make a "boundary by acquiescence" argument under Point I. However, the doctrine of boundary by acquiescence is a "distinct theory from that of adverse possession." *Conduff v. Stone*, 968 S.W.2d 200, 204 (Mo.App.1998). Therefore, because the theory of boundary by acquiescence was neither pled by the Naumans nor tried by the parties, this Court will not consider it on appeal. See *Id.* at 205–06; *Ortmann v. Dace Homes, Inc.*, 86 S.W.3d 86, 90 (Mo. App.2002).

*tens v. White,* 195 S.W.3d 548, 555 (Mo. App.2006). The reason for this requirement is to "afford the owner reasonable notice, either actual or constructive, that an adverse claim of ownership is being made by another." *Flowers v. Roberts,* 979 S.W.2d 465, 469–70 (Mo.App.1998).

In concluding that the Naumans failed to establish title to the disputed .6 acre by adverse possession, the circuit court explained:

> For example, the substantial lack of any form of boundary monuments precludes findings that any possession by Nauman was open and notorious, or exclusive; or that it could be said that Nauman gave any sort of realistic notice of his claim. Schoonover testified that the boundary was established by the remnants of an old fence line, during the time he farmed the 28 acres for the Soderholms. Mr. Nauman's recollection was at odds with Schoonover's testimony. Taking the boundary evidence as a whole, the best the Court can conclude is that prior to the Midland survey in 2007, neither the Soderholms, the Corbins, the Naumans, or the predecessor to Soderholm, had given much thought to the location of the boundaries. Under these circumstances, the Court finds that Mr. Nauman's use of some portion of the Soderholm Tract for growing crops did not ripen into a title to any part of the Soderholm Tract by adverse possession.

■ After carefully reviewing the record, we conclude that there is no evidence to support the circuit court's factual findings underlying its determination that the Naumans failed to establish that their possession of the disputed .6 acre was exclusive, open, and notorious.

■ First, while a claimant cannot exercise "exclusive possession" and "visible acts of ownership" over land when he himself has not "given much thought" to the boundaries of that land,[4] there is no evidence in the record here to support the circuit court's finding that none of the parties "had given much thought to the *location* of the boundar[y]" prior to the 2007 survey. (Emphasis added). Contrary to the court's conclusion, the evidence presented at trial established that all the parties not only had "thought" about the location of the boundary claimed by the Naumans, but that they all had a clear and mutual understanding as to the boundary's location.

Prior to 2007, and going as far back as the 1950s, Duane understood the west boundary of the Nauman Tract to be approximately forty-five feet west of the true boundary revealed by the 2007 survey. Duane asserted that a ditch running north to south between the Soderholm and Nauman Tracts evidenced the boundary claimed by him. Duane testified that over time trees began to grow up on the Soderholm side of the ditch and that, although he was unsure of the exact year, he eventually had to bulldoze the trees because they began to encroach on his side of the ditch. Duane stated that since at least 1981 he farmed the Nauman Tract up to the boundary claimed by him and, until 2007, no one disputed his ownership of the land up to that boundary.

None of the other testimony elicited at trial contradicted Duane's testimony as to the *location* of the boundary claimed by the Naumans. While the remaining witnesses differed in their *physical descriptions* of the boundary, these differences did not establish a misunderstanding as to

---

**4.** See *Warren v. Tom,* 946 S.W.2d 754, 760 (Mo.App.1997); see also *Weaver v. Helm,* 941 S.W.2d 801, 805 (Mo.App.1997) ("An adverse possession suit cannot be sustained unless the claimant can establish the precise boundaries of the property claimed. . . .").

the *location* of the boundary claimed by the Naumans. Instead, examining the boundary testimony chronologically, the varying physical descriptions, if anything, reflect Duane's testimony regarding the changes that have occurred over three decades to the topography of the boundary—the location of which is undisputed.

Pete Nauman, who leased and farmed the Soderholm Tract until 1996, said a "hedgegrow—or tree line" marked the boundary claimed by the Naumans. When asked if he ever had any difficulty with Duane regarding the location of the boundary, Pete responded, "No way."

Although Schoonover, who leased and farmed the Soderholm Tract from 1996 to 2006, testified that the boundary was marked by an "old fence line," he also stated that both sides of the fence line were overgrown with trees. Schoonover stated that during the years he farmed the Soderholm Tract, he farmed "right up to" the tree/fence line. Schoonover further testified that he never had any dispute with Duane about the boundary's location.

Meyerkorth, who began leasing the Soderholm Tract in 2006, testified that there was no longer a tree line between the tracts when he began farming the Soderholm Tract. Meyerkorth stated that there was a visible field edge between the Soderholm and Nauman Tracts that, prior to 2007, he recognized as the boundary claimed by the Naumans. Meyerkorth agreed that the field edge was approximately forty-five feet west of the true boundary revealed by the 2007 survey. Teale, the Soderholms's surveyor, confirmed the same field edge.

As reflected in the testimony outlined above, each party had contemplated and could clearly identify the boundary claimed by the Naumans prior to 2007. Not one witness indicated any uncertainty as to the location of the boundary. Indeed, the Soderholms have never argued to the contrary, at trial or on appeal.

The crux of the circuit court's ruling was the lack of harmony between Schoonover's and Duane Nauman's testimony regarding whether there was a fence along the boundary claimed by the Naumans. The Naumans argue that "[f]ence or not, no one disputes that Nauman farmed up to a field edge that was 45 feet to the west of the re-established (2007) survey line, and that Schoonover and those who farmed the 28 acres before him observed that Nauman edge as the border." We agree. While it may be disputed whether a fence existed along the property line claimed by the Naumans, the actual location of that line is undisputed. Therefore, we find nothing in the record to support the circuit court's finding that no one had given much thought to the location of the boundary claimed by the Naumans.

■ Second, the evidence summarized in this discussion also disproves the circuit court's finding that there was a "substantial lack of any form of boundary monuments." "When relating to land, a monument is some tangible landmark established to indicate a boundary." 11 C.J.S. Boundaries § 17 (2008). "They are classified into natural and artificial. Natural monuments are permanent objects found on the land as they were placed by nature. Artificial monuments are landmarks or signs erected by the hand of man." *Czarnecki v. Phillips Pipe Line Co.*, 524 S.W.2d 153, 157 (Mo.App.1975). "While a monument must be visible, a monument is a sufficient point of reference as long as it can be located and is an aid in establishing a location." 11 C.J.S. Boundaries § 17 (2008); see also *Czarnecki*, 524 S.W.2d at 157 ("A monument has been defined as being a 'fixed, visible object.'"

(quoting *Koch v. Gordon,* 231 Mo. 645, 133 S.W. 609, 610 (1910))).

As demonstrated by the testimony summarized above, a *visible* monument has always defined the boundary claimed by the Naumans and, although the monument's character changed over the years, the monument's location has always been *fixed.* The boundary was first evidenced by a ditch. Then, over time, trees that grew along the ditched represented the dividing line between the Soderholm and Nauman Tracts. Finally, even after Duane cleared the tree line, the boundary was marked by a field edge, or occupation line, which was established over the years by Duane's cultivating and farming of his tract up to the ditch/tree line. Therefore, we find nothing in the record to support the circuit court's finding that there was a "substantial lack of any form of boundary monuments."

While the circuit court was not required to state all of its reasons for ruling against the Naumans on their adverse possession counterclaim, the only bases articulated by the court are unsupported by the evidence. Consequently, because the entire basis of the court's decision is not reflected in its judgment, we are unable to discern whether the court's factual errors identified in this opinion entitle the Naumans to relief. Because of this uncertainty, we reverse and remand the Naumans's adverse possession counterclaim against the Soderholms for further findings.[5]

### Prescriptive Easement Across the Nauman Tract

In Point II, the Naumans challenge the circuit court's finding that the Soderholms established a prescriptive easement across the Nauman Tract. The Naumans contend the circuit court erred in its application of a presumption of adverse use.

▆▆▆ "The law does not favor prescriptive easements, thus the requirements for their establishment must be proven by clear and convincing evidence." *Homan v. Hutchison,* 817 S.W.2d 944, 947–48 (Mo. App.1991). "An easement by prescription is established by use that is 'continuous, uninterrupted, visible and adverse for a period of ten years.'" *Poe v. Mitchener,* 275 S.W.3d 375, 380 (Mo.App.2009) (quoting *Thomas v. King,* 160 S.W.3d 445, 448 (Mo.App.2005)). "A party claiming a right of use 'enjoys a presumption that the use is adverse and under a claim of right when there has been a long and continuous use of the disputed property.'" *Blue Pool Farms, LLC v. Basler,* 239 S.W.3d 687, 691 (Mo.App.2007) (quoting *Gill Grain Co. v. Poos,* 707 S.W.2d 434, 438 (Mo.App.1986)).

▆▆▆ In the instant case, Glen Jr. testified that since 1947, excluding the ten year period from 1996 to 2006 during which Schoonover farmed the Soderholm Tract, "as far as [he] kn[e]w" access to the Soderholm Tract has always been across the 16–foot access way. Additionally, the Naumans stipulated that Pete Nauman used the 16–foot access way for ingress and egress to the Soderholm Tract from approximately 1973 to 1996.

In holding that a prescriptive easement had been established, the circuit court explained that Glen Jr.'s testimony and the Naumans's stipulation "establish[ed] that the regular, customary and recognized access route to the Soderholm Tract was [across the 16–foot access way]," and that "[t]his use appears to the Court to have been 'actual . . . under a claim of right . . .

---

**5.** The Soderholms have filed a cross-appeal, contending the circuit court erred in holding their claims for damages and attorneys' fees abandoned. Because we reverse and remand, we need not reach the merits of the Soderholms's cross-appeal.

open ... and exclusive' for a period in excess of more than 45 years."

While the Naumans challenge the circuit court's reliance on both Glen Jr.'s testimony and the Naumans's stipulation regarding Pete Nauman's use, our analysis of the Naumans's argument essentially turns on whether Pete's use of the 16–foot access way raised a presumption of adverse use. Prior to 1952—when the elder Naumans conveyed the Soderholm Tract to the Andes—the elder Naumans owned both the Soderholm and Nauman Tracts and, thus, the prescriptive period could not have begun until at least 1952. *Brick House Café & Pub, L.L.C. v. Callahan,* 151 S.W.3d 838, 844 (Mo.App.2004) (" 'Since a person cannot claim adversely against himself, the prescriptive period does not begin to run while the dominant and servient tracts are under the same ownership or control.' " (quoting 25 Am.Jur.2d *Easements and Licenses* § 49 (1996))). Glen Jr.'s testimony that "as far as [he] kn[e]w" the 16–foot access way has always been used for gaining access to the Soderholm Tract hardly amounts to "clear and convincing evidence" that use of the 16–foot access way was continuous, uninterrupted, and visible during the years that the Andes family owned the Soderholm Tract. Thus, the only remaining evidence of use of the 16–foot access way after the tracts were severed from common ownership is the Naumans's stipulation that Pete Nauman used the access way from approximately 1973 to 1996 when he rented the Soderholm Tract from Lucy Andes.

 The Naumans argue that Pete Nauman's use of the 16–foot access way could not have been adverse because of his familial relationship with the Naumans. While "Missouri law normally presumes that use of the claimed easement is adverse, ... this presumption does not apply where there is a 'family relationship be-

tween the owners of the respective tracts.' " *Poe,* 275 S.W.3d at 380 (quoting *Brick House,* 151 S.W.3d at 844). "Stronger evidence of adverse use is 'required in the presence of a family relationship than where no such relationship exists.' " *Id.* (quoting *Tallent v. Barrett,* 598 S.W.2d 602, 606 (Mo.App.1980)).

Here, although Pete shares a last name with the Naumans and indicated at trial that he is *distantly* related to the Naumans, the Naumans did not present any evidence establishing the type of "family closeness" that would suggest Pete's use of the 16–foot access way was permissive. *Brick House,* 151 S.W.3d at 844. In fact, other than Pete's statement—made while testifying as a witness for the Soderholms—that he is a "distant" relative of the Naumans, there is no other evidence in the record concerning Pete's relationship with the Naumans.

Based on this lack of evidence, and given this Court's standard of review, we cannot conclude the circuit court erred in granting the Soderholms a prescriptive easement over the Nauman Tract, even absent a direct showing of adverse use. Point II is denied.

### Abandonment of Prescriptive Easement

In Point III, the Naumans argue that, even if the Soderholms established a right to a prescriptive easement, the easement was extinguished by the eleven-year period during which Schoonover and Meyerkorth accessed the Soderholm Tract across the Corbin Tract.

 Here, the circuit court held that "the eleven-year hiatus" did not constitute abandonment. In explaining the law of abandonment, the circuit court quoted the following language from *Creech v. Noyes,* 87 S.W.3d 880 (Mo.App.2002):

An easement may be extinguished by abandonment. Once an easement is es-

tablished in a plaintiff, a defendant has the burden to show abandonment. Abandonment must be proved by clear and convincing evidence.

Mere nonuser of an easement *acquired by grant,* however long continued, does not of itself constitute abandonment.... Further, once an easement is established or acquired, it is not abandoned or destroyed by mere nonuser or by the use of another means of ingress and egress. The fact that the easement holder finds a more convenient alternative route does not deprive the easement holder of the easement that remains for the holder's use and enjoyment whenever the holder has occasion to use the right.

An easement is considered abandoned when there is a history of nonuse coupled with an act or omission showing a clear intent to abandon. Accordingly, to prove an abandonment, there must be evidence of an intention to abandon as well as of the act by which that intention is put into effect; there must be a relinquishment of possession with intent to terminate the easement.

*Id.* at 884–85 (emphasis added) (citations omitted) (internal quotation marks omitted).

Accordingly, the circuit court reasoned:

Schoonover's testimony did not indicate an affirmative intent to abandon the easement, nor did his use of access across Mr. Corbin's property, by permission from Corbin, amount to a clearly intentional act of abandonment, as the law requires. Schoonover testified that his decision to use an alternative access was wholly motivated only by his good will toward Duane Nauman.

**6.** Jennifer L. Romeo, Annotation, *Loss of Private Easement by Nonuse,* 62 A.L.R. 5th 219

The Naumans contend the circuit court erred in failing to find the prescriptive easement had been abandoned because (1) an intent to abandon was not required, and (2) even if an intent to abandon was required, the evidence established an intent to abandon.

### (a) Intent to Abandon is Required

■ Pointing to the language from *Creech* quoted by the circuit court that "[m]ere nonuser of an easement *acquired by grant* ... does not of itself constitute abandonment," the Naumans argue that the circuit court misapplied the law by requiring a showing of intent to abandon. (Emphasis added). The Naumans direct this Court's attention to an *American Law Report* [6] that summarizes the split among courts across the country regarding whether mere nonuse alone operates as an abandonment of *prescriptive* easements. The Naumans ask this Court to clarify the rule regarding abandonment in Missouri and hold that an intent to abandon is not required in the context of prescriptive easements. In support of their argument, the Naumans cite the following language from *Dalton v. Johnson,* 320 S.W.2d 569, 574 (Mo.1959):

An easement created by grant is not extinguished by mere nonuser however extended the period of nonuser may be. It has been suggested that there is no good reason for making a distinction between easements created by grant and those acquired by prescription. However, the weight of authority is that an easement created by prescription is lost by mere nonuser for the same period as was required to establish it. Assuming (but not deciding) that the rule last stated is applicable in this state, it

(1998).

appears clear that plaintiffs did not lose their easement by nonuser as the period they failed to use it was just a little more than three years.

(Citations omitted).

The flaw in the Naumans's argument is that the rule regarding abandonment of prescriptive easements in Missouri has been clarified since *Dalton*. In *Auxier v. Holmes*, 605 S.W.2d 804 (Mo.App.1980), citing *Dalton*, this Court held that to constitute abandonment of a prescriptive easement, "the evidence must support (absent an expressed abandonment) an intent to abandon." *Id.* at 810. "Even failure to use will not by itself necessarily constitute an abandonment...." *Id.;* see also *Neale v. Kottwitz*, 769 S.W.2d 474, 476 (Mo.App. 1989) (holding prescriptive easement was not abandoned where there was evidence of continual use and *"no evidence to support an intent to abandon"*).[7]

Therefore, while it is true that the authority cited by the circuit court governs easements acquired by grant, the rule is the same as to prescriptive easements. To establish abandonment of the easement by Schoonover, it was necessary for the Naumans to show Schoonover's intent to abandon the easement.

### (b) Intent to Abandon was not Established

■ The Naumans also argue that the evidence established an intent to abandon.

The Naumans assert that Schoonover's decision to use the Corbin Tract was fueled by more than just a desire to maintain goodwill with his neighbor and was made "in reaction to [Duane]." The Naumans suggest that Duane must have communicated to Schoonover "in some manner" that he was "exercising exclusive dominion and control over the strip of land."

The Naumans's argument is directly contradicted by Schoonover's testimony regarding his decision to use the Corbin Tract: "Because Duane—*I had no evidence to this, this is what I felt*—was upset he didn't get a chance to buy [the Soderholm Tract]. And I wanted to be a good neighbor. I didn't want to cause him—being upset." (Emphasis added). This testimony clearly supports the circuit court's finding that Schoonover's "decision to use an alternative access was wholly motivated only by his good will towards Duane Nauman." Schoonover's neighborly desire to not exacerbate any negative feelings Duane may have had about the sale of the Soderholm Tract does not "clearly demonstrate the permanent relinquishment of all rights to the easement.'" *Creech*, 87 S.W.3d at 885 (quoting 28A C.J.S. Easements § 124 at 310 (1996)).

Accordingly, the circuit court did not err in finding that the prescriptive easement had not been abandoned. Point III is denied.

7. In *Spence v. Wrobleski*, 603 S.W.2d 91, 92–93 (Mo.App.1980), this Court held that: "Once a[ ] [prescriptive] easement is established, it is not abandoned or destroyed by mere nonuser or by the use of another means of ingress and egress.... However, nonuser for the period prescribed by the statute of limitations may cause a loss of the easement." In so holding, this Court cited *Barkshire v. Drainage Dist. No. 1 Reformed of Stoddard Cnty.*, 136 S.W.2d 701 (Mo.App.1940), in which this Court stated: "The rule seems to be settled by our Supreme Court that the non user of an easement for a period prescribed by the statute of limitations, constitutes an abandonment of the right." *Id.* at 707 (citing *Hatton v. Kansas City, C. & S. R.R. Co.*, 253 Mo. 660, 162 S.W. 227, 232 (1913)). However, in *Franck Bros., Inc. v. Rose*, 301 S.W.2d 806 (Mo.1957), the Missouri Supreme Court disagreed with the *Barkshire* court, explaining that it has never adopted any such rule. *Id.* at 812–13.

*The Naumans's Adverse Possession Claim Against Glen Jr. and Barbara Nauman*

In Point IV, the Naumans argue the circuit court erred in denying their third-party claim against Glen Jr. and Barbara Nauman. We need not address this argument in light of our ruling on the prescriptive easement claim.

In their petition, as an alternative to their prescriptive easement claim, the Soderholms claimed fractional ownership in the 16–foot access way based on a 2009 deed from Glen Jr. and Barbara. In response, the Naumans made a third-party claim against Glen Jr. and Barbara, asserting that Glen Jr. and Barbara did not convey any interest in the 16–foot access way to the Soderholms because, when the 2009 deed was executed, "[t]he 16 Foot Strip of Land was already exclusively owned ... by Duane & Martha Nauman" through adverse possession. We determined herein, under Points III and IV, that the Soderholms properly established a claim to the 16–foot access way based on a prescriptive easement that had not been abandoned. Accordingly, it is unnecessary to consider whether the Naumans presented a viable defense to the Soderholms's alternative theory of easement by express grant. Point IV is denied.

### Conclusion

We reverse the judgment on the Naumans's claim for adverse possession against the Soderholms and remand to the circuit court for further proceedings in accordance with this opinion. The judgment is affirmed on all remaining claims.

All Concur.